REUBEN B. COOK ET AL. *v.* STATE OF MISSISSIPPI.

1. BOUNDARIES, STATE AND COUNTY. *Mississippi river. Territorial jurisdiction.* Code 1892, §§345, 347, 361. Laws 1892, p. 365.

The counties of this state, and the territorial jurisdiction of courts, bordering on the Mississippi river, extend to the centre or thread of the stream.

2. INTOXICATING LIQUORS. *Sale. Evidence. Ferry boat on Mississippi river.*

Where the owner of a steam ferry boat, plying the Mississippi river from a point within to a point without this state, was indicted for the unlawful sale of intoxicants, it was error to permit the state to prove:—

(a) What a witness had found on the boat more than a year after the sale of which the indictment was predicated.

(b) Other sales, made without this state.

(c) The general character and reputation of the boat as that of a "whisky boat."

3. SAME. *United States Liquor Dealer's license. Parol evidence.*

The contents of a United States liquor dealer's license, in the absense of notice to produce, cannot be proved by parol.

4. EVIDENCE. *Objections and exceptions. Waiver.*

An objection to evidence, proper exception being taken, is not waived by a failure to renew the objection at other stages of the case to which it is applicable.

FROM the circuit court of, first district, Coahoma county.

HON. SAMUEL C. COOK, Judge.

Cook and Woods, appellants, were indicted, tried, and convicted of the unlawful sale of intoxicants and appealed to the supreme court.

Appellants owned and operated a steamboat and did a ferry business across the Mississippi River from a point in Coahoma county to a point in Arkansas, on the opposite side of the stream. The evidence for the state was to the effect that the sale in question was made east of the thread, or middle, of the stream as the river now flows. Appellants contended that the true boundary of the state is not the thread of the stream at this time, but as it existed when the boundary was established between Great Britain, owning east of the river, and France, owning west thereof, in 1763, and that it was incumbent on the state to show that a sale was made east of the thread of the stream as it flowed at that time. The opinion of the court contains a further statement of the facts.

*D. A. Scott* and *J. A. Glover,* for appellants.

It is not competent, without notice to produce, to show a United States revenue license by parol, and not competent to show it at all, unless it is shown that it covered the date of the sale; nor is it competent to show that the defendant kept liquors, if it can be shown at all, which we do not now affirm, without clearly showing that he kept them at the time of the sale." *Snyder* v. *State,* 78 Miss., 366.

It cannot be said that the court will take judicial cognizance as to the boundary line between the states of Mississippi and Arkansas, or as to the boundary lines of the county of Coahoma, or the first judicial district thereof, and it cannot be said, even admitting the truthfulness of the testimony of the two witnesses above mentioned, that the sale of liquor testified to by them was made in the first district of the county of Coahoma, Mississippi. The western boundary line of the state of Mississippi begins at the middle, or thread, of the stream of said river at the thirty-first degree north latitude; thence up the middle, or thread, of the stream, so as to intersect (in the center, or thread, of the said stream) with the southern boundary line of the state of Tennessee. Code 1892, § 345.

This is a fixed and definite and not shifting boundary line; or, in other words, the same does not change from time to time as the Mississippi River may shift or change its course; and, therefore, when it is said that a thing is done, or an offense is committed against the laws of the state on the east side of the present thread of the stream, no presumption arises therefrom, that said offense was committed in the state of Mississippi.

It was the duty of the district attorney to prove by some competent witness that the boundary line of the state of Mississippi and Arkassas was west of the point where the alleged sale of liquor was made and consummated. And this argument, or contention, is true as to the necessary proof regarding the western boundary line of the first district of the county of Coahoma, which is specifically fixed by law. (Section 361, annotated code; acts 1892, pp. 362, *et seq.*

It would be absurd for any reputable lawyer to argue that the boundary lines between states, where the same is fixed in the middle, or thread, of a stream, shifts from year to year according to what changes may be made by nature in the channel of the river in question. It frequently occurs, and especially on the Mississippi River, that the entire body, or main stream, if found, at this time, to be entirely in one state or the other. This is notably the case a few miles south of the town of Friars Point, in this county, where we find that for a good many years past the Mississippi River has entirely changed its course, until at this time both banks of the river are in the state of Arkansas, as is the whole body thereof.

Hence it is that no one, without proof on the subject, can, with any degree of certainty or conclusiveness, state where the boundary line between the two states is at this time, or was at the time of the alleged sale of whisky to the witness, Pickel.

The supreme court of the United States has said on this subject, in a very well-reasoned opinion handed down by Justice Davis, in a case concerning the boundary lines between the states of Missouri and Kentucky, that "if the river has sub-

sequently changed its course and now runs east of the island, the status of the parties to the controversy is not altered by it, for the channel which the river abandoned remained as before the boundary between the states, and the island (being the land in controversy) does not in consequence of this action of the water, change its owner," and sustains himself by referring to several authorities. *Missouri* v. *Kentucky,* 11 Wall., 395.

In thus contending that the state has wholly failed to prove the venue as laid in the indictment, we have not lost sight of the decisions of this court, in which it held that if the evidence is sufficient to raise a violent presumption, that the offense was committed in the county in which the trial takes place, the venue is sufficiently shown, but we say that the evidence in this case raises no such presumption as is contemplated by this court and by eminent text writers upon this subject.

The court below, in defiance of the well-settled rule in this state, refused to require the district attorney to confine himself to one illicit sale of whisky, but permitted him to roam at random all over the state of Mississippi and into the state of Arkansas to prove sales innumerable in and out of the state, and, in addition to this, allowed testimony to go to the jury as to the general reputation of the boat, Shamrock, and as to the general belief, knowledge, and reputation as to the business conducted on that boat.

*William Williams,* assistant attorney-general, for appellee.

Section 345 of the code of 1892 fixes the boundary of the state of Mississippi, and § 361 of the code fixed the boundary of the county of Coahoma. The court will take judicial notice of said statutes.

The testimony shows that the defense charged was committed on the eastern side of the thread of the Mississippi River, which certainly is in the state of Mississippi and in the first judicial district of Coahoma county.

That the appellants had whisky, appliances for the sale of

same, and a United States revenue license, and did sell whisky at other places, are facts which, although circumstantial in their nature, should have gone to the jury. The appellants were charged with selling whisky within the jurisdiction of the trial court in the state of Mississippi, and the state proved only one sale in this state.

CALHOON, J., delivered the opinion of the court.

The evidence sufficiently shows venue. Section 361 of the code, establishing the boundary of Coahoma county "to the river," and sec. 2, p. 365, laws 1892, fixing the western boundary of the first judicial district of that county "between said given line and the Mississippi River," and code, § 347, giving counties jurisdiction "to the western boundary of the state," must all be read in *pari materia* with § 345, fixing the boundary of the state as "beginning on the Mississippi River, meaning thereby the center of said river, or thread of the stream," etc. The middle line of that river marks the jurisdiction of the court of the counties and judicial districts of counties on that river, and courts take judicial cognizance that offenses between that line and our shore are in the jurisdiction of the courts of the districts on the margin east of the place of the crime or misdemeanor. *Sanders* v. *Anchor Line* (Mo. Sup.), 10 S. W., 595; 3 L. R. A., 390; *Buck* v. *Ellenbolt* (Iowa), 51 N. W., 22; 15 L. R. A., 187. *Medium filum aquae* certainly remains the jurisdictional boundary, regardless of any changes in the bed of the stream by gradual accretion and recession. *Nebraska* v. *Iowa*, 143 U. S., 359; 12 Sup. Ct., 396; 36 L. Ed., 186. And we are not required now to decide what would be the effect upon jurisdiction of a sudden avulsion. If such had occurred, the defendants must show it; the state having brought evidence that the occurrence was far east of the middle of the line of the river, and in front of the proper district.

The indictment in this case is specifially for the sale of liquor

and is under code, § 1574, as modified by the local election sections of the chapter on dramshops, and does not charge the new offense of keeping for sale, created by laws 1900, p. 141, chap. 104, but this is not material to the points to be considered. The indictment is perfectly valid.

The evidence showed that the sale was made in February, 1901, and yet the witness Wilkerson was permitted to testify that more than a year afterwards, in April, 1902, he was on the boat of defendants, which was operating under a federal and state coasting and ferry license, and found then on it whisky in a box, and some patent corkscrews, and a federal United States license to defendants. This was too long after the sale, and the contents of the United States license could not be shown by parol without previous notice to produce. *Snyder* v. *State,* 78 Miss., 366; 29 So., 78; *Clark* v. *Adams,* 80 Miss., 219 (s.c., 31 So., 746). It is true that we affirmed *Clark* v. *Adams, supra,* notwithstanding the error of admitting parol evidence of the license; but that was a civil action, and the proof of liability was overwhelmingly uncontradicted. Here the proof of the sale was seriously contradicted, and it is questionable if conviction would have resulted but for this and other incompetent evidence noted. Based on this evidence, the court charged the jury, at the instance of the state, as follows: "(2) The court instructs the jury that if they believe from the evidence, beyond every reasonable doubt, that the defendants have posted in or about their place of business in this state a license stamp showing payment of a special tax for the sale of intoxicating liquors, levied under the laws of the United States, or that they had such license, or had paid such tax, or if they were in this state in possession of appliances adapted to unlawful retailing, it is presumptive evidence that they were engaged in selling intoxicating liquors contrary to law." This charge burnt into the minds of the jury the incompetent evidence, and fails to fix it at or about the time of the sale. Evidence was allowed that

the general character and reputation of the boat was that of a whisky boat, which was clearly inadmissible. Moreover, it was permitted to the state to show other sales than that charged, and on the Arkansas side, at that. This was error; the very point being whether, on a ferryboat plying between the two banks of the Mississippi River, a sale was maide on the side of this state. *King* v. *State,* 66 Miss., 502; 6 So., 188.

We cannot agree with counsel for the state that because, after objection and exception to all the foregoing incompetent testimony, further evidence was given without objection on the same lines, the error was cured. Where a principle of admissibility is once decided, counsel need not annoy the presiding judge and his opposing counsel by interrupting with continual objections. He need only be concerned to be sure that it is exactly the same principle. *Herrin* v. *Daly,* 80 Miss., 340 (s.c., 31 So., 790).

*Reversed and remanded.*