## DALY v. UNITED STATES.

Circuit Court of Appeals, Seventh Circuit.
May 9, 1929.

No. 4077.

Morris K. Levinson, of Chicago, Ill., for appellant.

George E. Q. Johnson and Joseph A. Struett, both of Chicago, Ill., for the United States.

Before ALSCHULER and EVANS, Circuit Judges, and LUSE, District Judge.

LUSE, District Judge. This is an appeal from a judgment of conviction on a charge of maintaining a nuisance, in violation of the National Prohibition Act (27 USCA), entered in the District Court of the United States for the Northern District of Illinois, Eastern Division.

The first, second, and seventh assignments of error may be treated together, as all involve the question of appellant's sanity at the time of the alleged offense. The first two assignments are based on the proposition that the trial court should have held the appellant insane as a matter of law, the seventh assignment being based upon the alleged error in the instructions of the trial court with respect to appellant's sanity. The information charged the commission of the alleged offense between April 1 and May 21, 1928. The evidence disclosed that on September 20, 1923, appellant was adjudged insane and was committed to the Chicago State Hospital at Dunning, whence he was discharged on March 22, 1924. However, he was not formally adjudged "restored to the rights and privileges of a sane person" by the county court of Cook county until June 13, 1928, after the time of the alleged offense. The evidence further disclosed, however, that shortly after his discharge from the hospital in March, 1924, appellant went into business and attended to it in the usual way for nearly four years; that on January 6, 1928, he had given a bill of sale of the premises which he was charged with having maintained as a nuisance, upon which bill of sale he relied in part as a defense herein; and that in the spring of 1928 he had testified as a witness in another case in the trial court and before the same judge who heard the instant case. Appellant was asked whether he was not sane when he testified in the former case, and in response said:

"I did not know; I was not declared sane until I went to get declared sane a few weeks ago. * * * They did not say I was insane; they told me I was insane officially. I did not know that until a few weeks ago, and I got it fixed up."

It is a proper inference from this and other evidence in the case that the delay in securing an adjudication in the county court of Cook county, restoring appellant to the status of a sane person, was due to oversight on the part of appellant, and the trial court was undoubtedly correct in refusing to instruct the jury that appellant was insane as a matter of law at the time of the commission of the offense here in question. The instruction given by the court on the question of appellant's mental condition is deemed correct as far as it goes. In substance, the jury was told to consider all of the evidence relating to appellant's mental condition, and, if it believed him to be sane at the time of the alleged offense, it was no defense that formal adjudication of sanity postdated the offense date. If further elucidation of the law was desired by appellant's counsel, it should have been requested. There is of course a presumption that a condition once shown to exist continues until the contrary is shown, but no

instruction of such import was requested, and the evidence was ample to warrant the jury in concluding that from April 1 to May 21, 1928, appellant had become and was in full possession of his mental faculties.

■ Error is assigned because of certain remarks made by the trial judge during the course of the testimony of the defendant and his witness Ross. It is not deemed necessary to repeat here these remarks. The most that can be said of them is that the jury might have inferred that the trial judge was not favorably impressed with the character of the place nor of the persons who frequented it. This inference may only be indulged in by considering the language used, in its most prejudicial aspect, with respect to appellant. However, the real controversy below was not with respect to the character of the place nor of its patrons, but rather whether appellant was its proprietor and maintained it. Hence it cannot be correctly said that appellant was prejudiced by the inferences, if any there were, which might have been drawn from the remarks in question. Moreover, no exceptions were taken. See Lane v. Leiter (C. C. A.) 237 F. 149, 158. Appellant's counsel apparently was not impressed at the time that his client's case was being prejudiced by the remarks now questioned, and the point now made has much the aspect of an afterthought. No prejudicial error is thought to have occurred in this regard.

■ The third point which needs consideration is the contention that there was insufficient evidence to support the verdict of guilty. There was ample evidence that the premises in question were maintained by some one as a nuisance, as that is defined in the National Prohibition Act. It was admitted that Daly had once owned and operated the premises and employed the same bartender who was in charge on May 21, 1928, when the officers visited the place. It was claimed that appellant had sold the place to one Lambert in January, 1928, executing and delivering to Lambert a bill of sale. A paper, referred to as such a bill of sale, was identified as an exhibit, but for some undisclosed reason was not introduced in evidence. The evidence disclosed that about an hour after the agents arrived at the place Daly appeared in the back yard, looked towards the second floor, where the activities of the place were carried on, and called some one by name. The prohibition agents questioned him and he gave an assumed name, but later admitted he was Daly. He explained his presence by saying that he had heard the place was being raided and came there to see if he could arrange bond for the man. There were found in the place bills and invoices in the name of appellant, from which the jury might well have believed that he made purchases of coal delivered at the premises in the months of February and March, 1928; that the toilet in the premises was repaired at his expense on January 24, 1928; that the boiler was disconnected and connected again at his expense on April 2, 1928; and on April 2 and 25, 1928, he purchased sundry bottles and corks. Gas and electric light bills for intervening months since January, made out to Daly, were also found. In this state of the evidence we conclude that it was for the jury to say whether or not Daly's connection with the place had or had not terminated, and whether or not he was the person by whom the nuisance was being maintained at the time alleged in the information.

The remaining assignments of error have been considered but are not thought to require specific treatment. The judgment is affirmed.