CARROLL v. UNITED STATES.
No. 8633.

Circuit Court of Appeals, Eighth Circuit.
March 8, 1930.

H. D. Irwin, of Minneapolis, Minn., for appellant.

Robert V. Rensch, Asst. U. S. Atty., of St. Paul, Minn. (Lewis L. Drill, U. S. Atty., of St. Paul, Minn., on the brief), for the United States.

Before STONE and BOOTH, Circuit Judges, and REEVES, District Judge.

REEVES, District Judge.

Appellant was convicted on each of three counts contained in two informations, which charged him with the sale and possession of intoxicating liquor, and with the maintenance of certain described premises as a common nuisance. The two informations were consolidated for the purposes of the trial.

The unlawful sale and possession of intoxicating liquor were alleged to have occurred on the premises claimed to have been maintained as a common nuisance. The place of said offenses was described as the Elk Hotel, located at 18½ North Fifth street, Minneapolis, Minn.

Appellant makes the sole complaint that the evidence was insufficient to sustain the verdicts and that the court should have directed a verdict in his favor on each count, both at the close of the government's case and at the close of all the evidence.

It is the contention of the appellant that the evidence did not show his connection with the unlawful transactions.

The evidence was that said hotel was on a second floor and that on the evening of November 3, 1927, a government agent and an informer were admitted to said hotel, through a closed and locked door, by one Martin. They were conducted through a front room which was ostensibly used as a lounge room or lobby to a rear room, connecting with the front room by double doors. The agents asked for and were served nine drinks of white whisky or alcohol. Appellant was not present at that time.

On November 9th following, the government's agents again visited said premises and were admitted in the same manner by Martin. Again they passed through the front or lounge room to the same rear room. The double doors between said rooms were open. They asked for and were again served white whisky or alcohol. At that time they bought five drinks which were served in whisky glasses. The appellant was in the front or lounge room and in view of the agents. While the intoxicants were being served and consumed, appellant approached the double doors and, addressing the agents, inquired if he might close said doors. He received an affirmative reply, whereupon he closed one of the doors but left the other slightly open. Appellant then passed through the room, where the agents were, into another room described as the kitchen. This was the room from which Martin had obtained the intoxicants. He there had a conversation with Martin.

The subject of this conversation was not overheard by the agents. Appellant then returned to the front or lounge room. In leaving, the agents passed through the front room where appellant was. Appellant directed an inquiry to them as to why they were leaving so early. The agents replied that they were obliged to keep an engagement to attend a show but intended to return and asked the appellant if they might bring some girls up after the show. To this inquiry appellant replied, "Yes, but you will have to come early because we close early on week day nights." This conversation took place as appellant accompanied or escorted the agents to the outer door.

The evidence on the part of the government showed that appellant not only held a lease on the hotel property but also owned the furnishings of the hotel. Moreover, it appeared from appellant's witnesses that he spent most of the late afternoons and evenings at said hotel. One of his witnesses said that he was there "five or six times a week," and that he remained "up till 11 o'clock or so." The evidence further showed that on the evening of November 18, 1927, the premises were searched under a search warrant and a quantity of intoxicating liquor found in the kitchen where appellant and Martin had the conversation heretofore mentioned. Both appellant and Martin were present at the time of said search and both were arrested.

Appellant denied that he had the conversation mentioned by the witnesses for the government or that he was present at the time. However, he admitted the ownership of the furnishings and that he held a lease on said hotel property. He claimed, however, that he had sublet the hotel to one Somers. He said that Somers was the licensee of the city to operate the hotel and was present much of the time, including the evening the search warrant was served. Somers was not apprehended. When the arrest was made, he was not pointed out as the proprietor, although appellant said he was present.

Upon this evidence, the case was submitted to the jury upon instructions which were accepted and treated as unobjectionable at the time. Although no exceptions were taken to the charge of the court, yet appellant now urges that the court in the interest of justice should consider the failure of the court to charge the jury upon circumstantial evidence, and more clearly upon the presumption of innocence. These, with the formal assignments of error, will be considered in the course of the opinion.

416

1. The motion to dismiss, or demurrer interposed at the close of the government's evidence, was overruled, whereupon the appellant offered testimony in his defense. In doing so, he waived his demurrer and took the chance of strengthening the government's case by his own evidence. 26 R. C. L. § 73, p. 1065. However, wholly apart from any strengthening or helpful evidence of the appellant, the evidence adduced by the government was sufficient to warrant submission to the jury.

The jury had a right to believe, upon the evidence, that appellant had not sublet the hotel property to Somers, as claimed by him. It would follow that he, being the lessee and the owner of the furnishings, could be considered as the operator of the hotel. Particularly would such an inference be justified in view of his conversation with the agents on the evening of November 9th. At that time he acted as one in authority in closing the double doors. His conversation with Martin in the kitchen was not the part of a mere guest. When the government agents were about to take their departure he accompanied or escorted them to the door with expressions of solicitude as to the reason for their early departure. When the agents indicated a desire and purpose to return, he urged them to do so early because "we close early on week day nights." He then acted as host. Moreover, the agents testified that the appellant witnessed the transactions in the back room and observed the consumption of intoxicants bought there.

In Dallas v. United States (C. C. A.) 4 F. (2d) 201 loc. cit. 202, the court said in respect of a nuisance charge: "It is not necessary, to justify a verdict of guilty on the charge of maintaining a common nuisance, that the defendant must have made unlawful sales or have unlawful possession of intoxicating liquors, if he, with full knowledge that his premises are so used, permits and aids the tenants to unlawfully keep and sell intoxicating liquors on the premises owned by him."

In the instant case the jury had a right to believe not only that appellant was the proprietor and in charge of said premises but that Martin, who actually made the sales, was acting for him. To give the appellant the benefit of the most favorable inference, there yet remains the fact gleaned from the evidence of the government's agents that appellant was aiding and abetting the unlawful transactions. This, under the law, would make him just as guilty as if he had been the sole participant. United States Code, title 18, § 550 (18 USCA § 550); Dandrea v. United States (C. C. A.) 7 F.(2d) 861; Heitler v. United States (C. C. A.) 280 F. 703.

Supplementing the evidence of the government was the damaging evidence adduced by appellant to the effect that he spent the late afternoons and evenings at the premises with comparative regularity. The evidence was sufficient to warrant the trial court in sending the case to the jury. Daly v. United States (C. C. A.) 33 F.(2d) 443.

2. It is unnecessary to notice the complaints relative to the charge of the court to the jury. The record shows that at the conclusion of the charge, the court said: "Are there any suggestions, gentlemen?" (No response.)

Appellant now says that the court should have instructed the jury on circumstantial evidence and should have given a more complete instruction on presumption of innocence.

Error cannot be predicated upon failure to instruct the jury on questions not covered by a request. Dinger v. United States (C. C. A.) 28 F.(2d) 548, 550.

"Failure so to charge, where the court's attention is not called to the omission, is not ground for reversal. Silverberg v. United States (C. C. A.) 4 F.(2d) 908;" Hermansky v. United States (C. C. A.) 7 F.(2d) 458.

An examination of the charge shows that the court fairly covered the subject of presumption of innocence. The record is free of reversible error, and shows that appellant had a fair trial.

The judgment is affirmed.