**BRADY v. UNITED STATES.**

**DE KEYZER et al. v. SAME.**

Nos. 4227, 4242.

Circuit Court of Appeals, Seventh Circuit.
June 6, 1930.

450

I. R. Wasson, of Peoria, Ill., for appellants.

Marks Alexander, of Springfield, Ill., for the United States.

Before ALSCHULER, PAGE, and SPARKS, Circuit Judges.

PAGE, Circuit Judge.

No. 4227 is the appeal of Brady and No. 4242 is the appeal of De Keyzer and Van Heck, all tried together and convicted under three counts of an indictment alleging a conspiracy to (a) maintain a nuisance, (b) sell intoxicating liquor, and (c) possess intoxicating liquor, in violation of the National Prohibition Act (27 USCA).

Brady, in 1925, owning a saloon property at 213 West Third street, Kewanee, Ill., that had been vacant most of the time since Kewanee went dry in 1914, leased the premises of De Keyzer. In 1926, while De Keyzer's lease was in force, the place was raided, and De Keyzer pleaded guilty to an information of three counts charging him, under the National Prohibition Act, with the possession

and sale of liquor, and, in the third count, with maintaining a nuisance at 211 West Third street, Kewanee. This indictment followed a raid on August 1, 1927.

■ Brady is urging many errors. The first one is the same as the sole error relied on by De Keyzer and Van Heck, namely, that it was error to admit in evidence the record of De Keyzer's conviction in 1926. The objections urged were overruled, but no exceptions were reserved to the court's rulings. The government's theory was, and is, that the conspiracy consisted of acts and things done from the making of the lease to De Keyzer in February, 1925, to the surrender of the premises to Brady in 1927, and that the plea of guilty, alleged to be one of the overt acts under this indictment, was one step in the conspiracy to perpetuate an unlawful business. The case is argued on the theory that the charge on which De Keyzer was convicted was the same as the charge here. The difference is that the things there charged against De Keyzer as substantive offenses are here merely incidents, which, together with many others, go to make up the conspiracy. It is frequently disclosed that one of the ways of escaping punishment for violations of the National Prohibition Act is for the accused to suddenly transfer his place of business to a stranger, or a servant, so that the real parties in interest disappear and remain under cover. Whether the plea of guilty, under which De Keyzer was convicted, and the subsequent bill of sale from De Keyzer to Van Heck, were parts of a plan to accomplish the purpose of the conspiracy charged was a question for the jury.

■ It is urged that there is a variance shown because the third count of the information located the nuisance charged therein at 211 West Third street, and the third overt act following each count of the indictment here gives the same location, whereas the proof here shows that the sales, etc., were made at 213 West Third street. There is no question but that all the violations took place at what the evidence shows was 213 West Third street, and that De Keyzer pleaded guilty to an offense that in fact was committed at number 213. The act of 1926 was but one incident in the many that made up the conspiracy, if one is shown, and the specific place where committed was immaterial. The allegations of the overt acts are under a videlicit, and need not be proven as laid. No one was surprised or misled, and it does not appear how harm could have come from the alleged variance.

The District Attorney is charged with unfair tactics in the cross-examination of witnesses and impropriety in his address to the jury. It appears that it was necessary, because of the attitude of some witnesses, to adopt some unusual methods in cross-examination. After carefully reading the evidence, we do not find the District Attorney subject to any criticism in that regard.

 Brady brought in men of high business standing, who testified that his reputation as a law-abiding citizen was good. Complaint is made that no more than five such witnesses were allowed, and also of alleged improper cross-examination of those witnesses. We think the limitation and the cross-examination were not objectionable. Such matters usually are within the sound discretion of the court, and no abuse of discretion appears.

█ Error is assigned on the court's treatment of government's witness Henning, who seems to have exhausted the patience of the court. He was sent to jail until his mind cleared up, and he was ready to tell the truth. Later in the day, he returned to court, asked, and was permitted to testify further. On the following day, Brady's counsel called Henning to the stand for further cross-examination. He was not cross-examined, but was asked to and did relate to the jury what transpired on his way to the jail, while he was there, and on his way back to court. The urge is that the other witnesses were, in effect, terrorized by the court's action. What the court did was after the jury had retired from the room. Brady, deliberately, for his own purposes, put the whole matter before the jury in open court. It does not appear that any witness who thereafter testified heard anything that was said or done. It is not complained that Henning testified, after he came back from jail, to anything except the truth. His experience seemed to have benefited him, and defendants were not prejudiced.

We see nothing improper in the District Attorney's address to the jury. In any event, after each objection, the court told the jury, in substance, that they would understand that counsel was only expressing his own views of what the evidence showed. No exception was preserved.

█ The main contention before us is that there is no evidence against Brady. There is no evidence that Brady, personally, sold or possessed or drank unlawful liquor in the soft drink parlor, and he denies knowledge of any such sale or possession. It is not denied that he had a home in Chicago, and much of the time was away from Kewanee. In the De Keyzer lease was the provision: "It is further agreed by both parties that there shall be no intoxicating liquor sold on the premises with their consent."

Brady had conducted a saloon in the premises at 213 West Third street for many years. After 1914, the property was vacant for seven or eight years, but for a time before the lease to De Keyzer, a restaurant was operated there, and later a soft-drink parlor. The building faced north, was 22 feet wide and 130-odd feet long. Brady had operated a bottling works in the rear 32 feet of the basement, first and second floors, and on February 23, 1925, he leased that part to De Keyzer and another. From the lease to De Keyzer, on the same day, of the remainder of the basement and first floor, Brady reserved for his use a space for an office, located somewhere in the front part of the first floor and separated from the rest of the room by a low partition. Some of the witnesses said it could be entered from the street, or by going behind the bar. There were tables in the room, at which people played cards, read, talked, drank, and ate. The old saloon bar and back bar were there, as were also the usual saloon fixtures and equipment. A dumb waiter was back of the bar and was operated between the first and second floors to carry food and drink to a gambling room on the second floor.

April 30, 1925, about sixty days after De Keyzer's tenancy began, a prohibition agent bought liquor there, and in July, 1926, a raid was made on the place by the federal prohibition officers. On the question as to whether there was liquor found on that day, there is evidence both ways. A safe in the office, belonging to Brady, was sealed by the prohibition officers. When Brady learned of the raid, he had the chief of police of Kewanee go to Peoria, where he got permission from Eaton, known to Brady to be the prohibition agent, to let Brady open the sealed safe on condition that the chief of police would keep for Eaton any liquor found therein. When asked how he knew about the raid, the chief of police said: "That don't take very long to hear of a raid up there. I heard of it in a general way from a good many places." The chief of police, testifying in 1929, said that he had searched the place three or four times in the preceding ten years, but could not say for sure whether he had searched it since January, 1926. He also said he went into those places nearly every morning to see what was going on. When

Brady was asked whether or why he did not try to get De Keyzer out of the premises, he replied, "O, they didn't find anything." In November, 1926, De Keyzer pleaded guilty to the information, above discussed, and in December, 1926, made a bill of sale of the place to Van Heck. July 1, 1927, when the place was raided again, the safe was again sealed. Much is claimed for Brady because he, immediately after the July 1, 1927, raid, took steps to cancel the De Keyzer lease. The facts indicate that possibly there was a different reason for canceling the lease, which was then held from month to month, probably subject to a thirty-day notice. Some time after July 1, 1927, not shown with much definiteness, the mayor of Kewanee, as attorney for Brady, sent for De Keyzer and told him that Brady wanted him to vacate the premises. No reason was given why Brady wanted possession, and De Keyzer did not ask why. Although De Keyzer said he would see Van Heck, he waived notice and said unconditionally that he would get out within thirty days. Apparently, Van Heck had nothing to say about it. There is some evidence that De Keyzer paid for the telephone, and that Van Heck was in the premises using the telephone as agent for De Keyzer until October, 1927. It also appears that Brady was trying to sell the place. When his negotiations for the sale began does not appear, but they had so far progressed that under date of August 1, 1927, Brady signed a contract of sale with a former tenant, and therein agreed to deliver possession on that date. We find nothing in the circumstances to support an inference that Brady got De Keyzer out because he was shocked at De Keyzer's violation of the National Prohibition Act (27 USCA). In what was said there was no intimation that De Keyzer had done any wrong.

▮ The room on the second floor that Brady testified was fixed up as a card room, he said was generally open, that he did not know who used it, but that "the fellows used to go up there and enjoy themselves in the winter time." Of course that meant heat, light, tables, chairs, etc. Brady had not leased that room to any one. It was used in conjunction with the room below. That it was a gambling room is clearly established, and the jury had the right to consider all the facts relating to the room and its use as bearing directly on the question as to whether Brady was to be considered a law-abiding citizen. Those facts strongly indicate that he was not averse to having his property used to violate at least one law, a circumstance which the jury was at liberty to consider, in view of the affirmative evidence offered of Brady's good character.

Brady was 60 years old, and had long been a saloon keeper in Kewanee. He had considerable other business property in Kewanee, and was often in this place, his office and business headquarters at Kewanee being in it. He was in and about these premises quite habitually, sat at the tables and read or played cards, and talked with the habitués of the place. He was not a man likely to be deceived by what was going on around him in such a place. There is much evidence that sales of liquor were openly made. At least one policeman went in there and drank openly while on duty. At least one man got drunk there, so drunk that counsel for defendant Brady tried to show that by reason thereof he had to be thrown out. There were small whisky glasses, in plain view, upon the bar, and there is evidence that there were grips piled up against the outer door of the office, so that, to reach his office, Brady would have to go behind the bar. There was evidence that there was an odor of "hootch" from the drinks that were spilled upon the bar. It is not necessary to recite further facts to justify the conclusion that a person, less experienced than Brady, would have been well aware of the violations of law on his property and of the unlawful character of the business there being transacted.

We are clearly of the opinion that the evidence presented a jury question as to all defendants.

The judgments are affirmed.