## REID v. UNITED STATES.

### No. 4361.

Circuit Court of Appeals, Seventh Circuit.
Oct. 24, 1930.

Judson E. Harriss, of Duquoin, Ill., and John N. Karns and Harry J. Flanders, both of East St. Louis, Ill., for appellant.

Ralph F. Lesemann and Harold G. Baker, both of East St. Louis, Ill., for the United States.

Before EVANS, SPARKS, and PAGE, Circuit Judges.

SPARKS, Circuit Judge.

Appellant, with Stanley Schober, James Davison, and Buster Alongi, was charged by indictment in five counts with unlawful manufacture and illegal possession of intoxicat-

ing liquor, illegal possession of mash intended for use in the manufacture of such liquor, the maintenance of a common nuisance, and with a conspiracy to violate the provisions of the National Prohibition Act (27 USCA) by the manufacture, possession, and sale of intoxicating liquor, and the maintenance of a nuisance. The case was submitted to a jury. Appellant, Davison, and Schober were convicted on each count, and Alongi was acquitted.

■ The only error insisted upon is that the court erred in overruling the motion of appellant for a directed verdict at the close of the government's evidence, and at the close of all the evidence. These rulings present the question as to the sufficiency of the evidence to support the verdict.

The case originated as a result of a search of the premises known as No. 10-A East Main street, Duquoin, Ill., by federal agents on December 3, 1929. The premises in question, which were owned by appellant, consist of a two-story brick building, and the first floor, known as 10 East Main street, was occupied as a shoe repair shop, a news agency, and a cleaning establishment. A stairway, covered with a sheet-iron inclosure, is located on the outer east side of the building and leads from the street to the door of the second floor. This door was kept locked at all times, and admission could be gained only by the use of a push button electrically operated, whereupon the door was unlocked by an attendant.

At the time of the search the government agents pressed the button, whereupon Schober came to the door and unlocked and partly opened it. The agents stepped into a small hallway into which the door opened, from which they saw a barroom and three men standing at the bar, one of whom had a glass of home-brew beer before him. The agents placed Schober under arrest and searched the premises. The room in which the customers were found was equipped as a saloon, with an old-fashioned bar and back bar. On the bar were three slot machines, and on the back bar a cash register and several large and small glasses of various descriptions, and also a quart of colored spirits; and on the floor behind the bar were two one-gallon jugs, each half full of colored spirits. On the east side of the barroom and in the ice box and in an adjoining room they found a total of 524 pints of home-brew beer, 60 gallons of home-brew mash, 12 gallons of alcohol, and about 35 gallons of colored spirits, together with empty beer glasses, jars,

whisky bottles, an electric device for aging and heating liquor, and materials and equipment for bottling beer and whisky. All the beer and colored spirits found contained more than one-half of one per cent. of alcohol by volume.

While the search was being made the door bell rang several times and one of the agents answered it, and on each occasion found that the alarm was caused by a customer who desired to buy a drink.

The agents further found that the premises were equipped with tables designed for use in gambling.

In and on the back bar were found letters addressed to appellant bearing postmarks of various dates in July, 1929, some to this address and one to his post office box number. There were also found light bills for these premises for the year 1929, some in the name of appellant, one of which was for the light service of appellant's residence located outside the city limits. A lease for the premises for a period of one year from March 1, 1929, executed by appellant, was also found in a drawer in the back bar. The signature of lessee, partially obliterated by ink, seems to be that of Richard Morris, a former occupant. On the reverse side of this lease there is an assignment filled out so as to assign all of lessee's interest to the defendant Davison, and also a consent by lessor to the assignment to Davison; but neither the assignment nor the consent was signed. The original lease and a copy were together, and with them was an account book apparently showing liquor and gambling transactions for a period of several years. The ownership of the book does not appear in evidence, but the name of appellant appears on one of the pages opposite certain entries showing either the purchase or sale of a large number of cases containing certain dozens of something. Appellant testified concerning it: "I cannot tell you where I got that book. I have seen a book like it and that is my name up in the corner. I can't tell you whether that is my handwriting or not, it don't look like it."

It was further shown that Richard Morris occupied these premises from February until early in July, 1929, during which time he kept and sold whisky and made and kept home-brew beer there; that during this time one Camden conducted a crap game there which was financed by appellant, and from which appellant was paid two-thirds of the profits; and that appellant was there several times during its operation.

Some time between July and early September, 1929, appellant rented these premises to his codefendant Davison, who had finished serving, the previous September, a sentence of six months for bootlegging. The premises were rented on this occasion, according to Davison, for the purpose of selling soft drinks, cigars, cigarettes, and for conducting a poker game. Davison had cooked for Morris in these premises from a time shortly after his discharge from jail until the death of Morris in July, during which time he had there conducted a poker·game. He retained the rooms under his own rental contract for three weeks, and was succeeded in possession by his codefendant Schober.

The evidence is quite clear and convincing that Schober was making and selling bootleg whisky and home-brew beer on rather a gigantic scale from early in September until the raid by the federal agents on December 3, 1929. He says that at the time of the raid he had between seven and eight hundred pint bottles of home-brew on hand. Referring to a time when appellant was there, he said: "I kept the door locked and had a push button to get in. When Mr. Reid came up there, he pressed the button and came in that way. I just kept the door locked whether I was selling booze or not. I cannot answer why I kept the door locked. Yes, I will answer it; I started in already to sell a little booze about a week after I was there. I guess Mr. Reid knew I was selling booze up there when he came up there."

Since March, 1929, appellant has operated a cigar store and crap game immediately across the street from 10 East Main street, and was at his store daily. He admits that he is the owner of the bar fixtures and slot machines in the premises which were searched.

It is not contended that appellant personally manufactured, sold, or possessed the intoxicating liquor involved in this cause, nor is it necessary that this be proved in order to sustain the conviction. Whoever directly commits any act constituting an offense defined in any law of the United States, or aids, abets, induces, commands, or procures its commission, is a principal. U. S. C., title 18, § 550 (18 USCA § 550); Heitler v. United States (C. C. A.) 280 F. 703.

An owner of property who knows that his tenant is maintaining a common nuisance therein by manufacturing and selling liquor therein and keeping liquor for sale, and consents to such conduct upon the part of the tenant, thereby aids and abets in the mainte-

nance of such nuisance and is guilty as a principal in maintaining it. Heitler v. United States (C. C. A.) 280 F. 703; Cook v. United States (C. C. A.) 299 F. 291; Steir v. United States (C. C. A.) 2 F.(2d) 149; Dallas v. United States (C. C. A.) 4 F.(2d) 201; Carroll v. United States (C. C. A.) 39 F.(2d) 414.

Much of the evidence as set forth above is denied by appellant, but we have no power to weigh conflicting evidence. This was the duty of the jury. Rabideau v. United States (C. C. A.) 40 F.(2d) 909; Brady v. United States (C. C. A.) 41 F.(2d) 449.

After reading all the record we are convinced that there is sufficient evidence to sustain the verdict of the jury as to each count. Certainly there was evidence to the effect that appellant's tenants were guilty as charged, and they are not appealing from the judgment. From all the circumstances as above set out the jury was warranted in finding that appellant had full knowledge of the facts and acquiesced therein. When he visited the place, he could, by a meager exercise of his senses of sight and smell, have been aware of the conditions and no doubt was so aware. While there was no evidence as to odor, yet it is a generally well-known fact that alcohol, whisky, and home-made beer and mash, especially in the process of making, have a very penetrating odor. This, in connection with the fact that admission could be had only by use of an electric button, and the further fact that appellant's mail and receipts of comparatively recent date were found in and about the bar, is very persuasive in support of the verdict. According to Schober, appellant, after his visit to the place as described by the witness, and with all the information he must have had, never said one word to Schober about the conduct of the business in which he was then engaged or the secretive manner in which it was conducted. This fact weighs very strongly on the matter of acquiescence.

That the business as conducted constituted a nuisance there can be no doubt. That appellant and his codefendants planned and conspired to do the things with which they were charged is quite a rational conclusion from the evidence. There is much testimony of appellant to which we have not referred, and which, if believed, would exonerate him; but we are concerned only with the evidence which supports and tends to support the verdict, for upon this the jury must have relied.

Judgment affirmed.