## CHERRY v. UNITED STATES.
### No. 5472.

Circuit Court of Appeals, Seventh Circuit.
June 13, 1935.

I. Harvey Levinson, of Chicago, Ill., for appellant.

Dwight H. Green, of Chicago, Ill., for the United States.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

Samuel Cherry was tried and convicted on two counts of an indictment which charged him with (a) having feloniously received, with intent to convert to his own use, goods and chattels of the value of $1,080, which were then in the course of transportation from Indiana to Wisconsin, which goods had been unlawfully taken and carried away from a certain automobile truck owned by a corporate common carrier then engaged in

the business of transporting interstate shipments of freight, and (b) with having feloniously possessed, with intent to convert to his own use, the same goods, etc. Joined with him were seven others of whom five pleaded not guilty, one was dismissed, and one was not apprehended. Later, one of the defendants pleaded guilty and testified against appellant who was separately tried.

Upon the pronouncement of a penitentiary sentence, this appeal was prosecuted.

### EVANS, Circuit Judge.

The only error we need consider is one which is directed to the refusal of the court to grant appellant's motion to direct a verdict at the close of the testimony. A careful study of the evidence leads us to the conclusion that this motion should have been granted.

The facts may be said to be almost without conflict. On January 25, 1934, a truck loaded with 655 cases of canned goods was traveling from Indiana to Wisconsin on U. S. Route 30. Near Aurora, Illinois, four highway men, at the point of their revolvers, took the truck from the driver and drove the same to Chicago. The next day the merchandise was, through a middleman, sold to appellant and placed in his store with his other stock of goods.

There is no question but that a truck traveling in interstate commerce was "hijacked" by four men and the merchandise was on the next day sold to appellant.

The only issue is as to appellant's knowledge that the goods were stolen.

Appellant is a man about fifty years of age. He has lived in Chicago for many years with his wife and three children. He has been in the grocery business twenty-six years and was at the time in question operating the Municipal Grocery at 3717 West Chicago Avenue, a substantial and apparently successful business. His reputation was pronounced good by the testimony of numerous men of apparent reliability who knew him well. He voluntarily took the witness stand and was examined and cross-examined upon the purchase of the merchandise. In fact, his testimony is about all the evidence received on the issue of knowledge.

He testified that a man called to see him and informed him that he purchased goods at auction and sold the same to the retail trade and that he could deliver 650 cases of canned goods, consisting of beans, hominy, tomato soup, etc. He first asked $1.50 a case. Appellant offered one dollar per case, and he subsequently made the purchase at one dollar per case plus cartage fees. Appellant's method of doing business was to buy and sell for cash. 350 cases of the goods were delivered at two thirty o'clock in the afternoon, the seller and another man participating in the transfer of the goods from truck to the store. Appellant sampled the goods and found them satisfactory. Later, about five in the afternoon, another truckload of 292 cases was delivered. Appellant testified he paid $642 for the merchandise and $8 for the cartage. He took no receipt, and no invoice was delivered to him.

Appellant testified that he made the purchase because it was his judgment that such merchandise was going up in price. This was in January, 1934, and his judgment was vindicated. He carried a rather large stock of goods, and the amount of the purchase was approximately one-sixth of his total stock. There was also uncontradicted testimony to the effect that he paid the fair market price for the merchandise.

Upon being informed that the merchandise was stolen he asserted his innocence, denied all participation in the holdup, and made no admission suggestive of guilt. In many respects his testimony was corroborated by others, including his brother.

The Government's case is predicated upon the testimony of one Domazewicz, one of the party of four that held up the truck at the point of revolvers. He first pleaded not guilty to the offense charged in the indictment, but changed his plea to guilty. Sentence, however, had not been pronounced upon him. He testified that he and his three associates started out about midnight and met a truck on the highway near Aurora. The four bandits carried three revolvers and one shotgun, and before their menacing guns the driver was compelled to turn over the truck to them and with the witness as driver, it was taken to Chicago. Contact was made with another party, Anthony Vercillo, who sold the goods to appellant. This witness, Domazewicz, had no conversation with appellant.

On cross-examination he admitted that he had not been sentenced upon his plea of guilty. (He has since been sentenced and placed on probation.) He said he had pleaded guilty in this and three or four other "hijacking" cases which were still pending but in all cases sentences had been suspended. He professed to an awakened conscience, saying, "I am testifying here because I want to see the right thing done. * * * When I was arrested the moral conviction to see the right thing done suddenly struck me."

■ In appraising the weight of the Government's proof and particularly the testimony of Domazewicz, we are not unmindful of the rule which makes the jury rather than the court the sole judge of the credibility of the witnesses. Gerard v. United States (C. C. A.) 61 F.(2d) 872; Rabideau v. United States (C. C. A.) 40 F.(2d) 909; Reid v. United States (C. C. A.) 44 F.(2d) 51.

■ We likewise recognize that the uncorroborated testimony of an accomplice, even though a confirmed criminal like Domazewicz, is sufficient to support a conviction. We have so viewed the case before us. The issue, however, is not one of weighing the testimony, nor of credibility. It is one where we are called upon to ascertain the existence of any evidence which tends to show that appellant knew the goods which he purchased were stolen.

■ The only circumstantial evidence, which unexplained, pointed to such a conclusion consists of the facts that (a) the goods were purchased from a thief, (b) shortly after the theft, (c) without obtaining a receipt or other evidence of the transaction, and (d) payment for the goods in cash.

The explanation offered by appellant is not disputed. It is not inherently unreasonable, and we are unable for that reason to reject it. In fact it was perfectly plausible. The explanation is that appellant was in the grocery business, the conduct of which necessitated the purchase of merchandise of the character here involved. He stated that he sold for cash and bought for cash. He did not keep his money in a bank. The practice of not depositing money in a bank was not unusual in 1932, 1933, and January, 1934, and therefore the adoption of such practice was not suggestive of an attempt to avoid creating evidence usable in a criminal prosecution.

While the evidence showed he purchased the goods from a thief, or the representative of a thief, and that the thief had obtained possession only a short time before, yet the fact remains that he purchased goods which he needed and paid a fair market price therefor; that the transaction took place at his store and in the daytime.

While we appreciate the indignation and resentment which must have moved the court and the jury as details of the highway robbery were related, yet conviction of innocent parties cannot be predicated upon any such righteous indignation. Nor are we unmindful of the responsibility which a purchaser who knowingly purchased stolen goods must assume in a criminal transaction (a responsibility which we are only too anxious to enforce), nevertheless there must be at least some suggestion that a buyer knows that a seller is disposing of stolen goods before the buyer can be held in a criminal action to have participated in the crime. Notwithstanding our contempt for a purchaser, who for a discounted price, is willing to knowingly relieve a thief of his stolen goods, we find in the case before us no evidence that would justify a jury in finding appellant to have participated in such an offense—defined by section 409, title 18 USCA.

The judgment is reversed.