**Pedro Amado TORRES, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16370.**

United States Court of Appeals
Ninth Circuit.

Sept. 3, 1959.

Rehearing Denied Oct. 20, 1959.

Daniel G. Marshall, Los Angeles, Cal., for appellant.

Laughlin E. Waters, U. S. Atty., Robert D. Hornbaker, Robert John Jensen, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before MARTIN*, CHAMBERS and BARNES, Circuit Judges.

BARNES, Circuit Judge.

Appellant was indicted on a two count indictment charging him with theft of a movie camera and accessories moving in interstate commerce, and with possession of the same property knowing it to have been stolen from interstate commerce. Both counts were based on 18 U.S.C. § 659.

After trial on both counts, the jury found Torres not guilty of the theft, but guilty of possession. Appellant filed a motion for judgment of acquittal, and, alternately, a motion for a new trial. Each was denied. Timely appeal was taken from the judgment and commitment which sentenced him to eighteen months in prison. An order allowing appellant to proceed in forma pauperis was entered subsequently by the lower court. This Court has jurisdiction. 28 U.S.C. § 1291 and Fed.R.Crim.P. 37(a), 18 U.S.C.

Appellant raises four points on this appeal: (1) That he was denied effective assistance of counsel in violation of the sixth amendment because of the short period of time given his court-appointed counsel to prepare the case for trial; (2) that the acquittal on the theft charge operated as an acquittal of defendant on the charge of knowing possession of the same property; (3) that appellee United States failed to prove beyond a reasonable doubt that the property in question was of a value in excess of $100.00 (which meant that a longer sentence could be, and was, given to appellant than if the value were *under* $100.00); and (4) that the United States failed to prove beyond a reasonable doubt that appellant *knowingly* possessed stolen property.

I

In considering the claim that appellant was denied effective assistance of counsel, it becomes necessary to examine the chronology of events before and at the trial. Appellant's claim is simply that his counsel did not have enough time to prepare the case adequately, or for that matter, to acquaint himself with its facts. The indictment was filed on June 11, 1958, and appellant arraigned on June 30, 1958, at which time he asked for time to obtain counsel. This was granted him. When the case came up for the setting of a trial date, on July 7, 1958, appellant appeared without an attorney. The setting was thereupon continued until July 21, 1958. On July 21, 1958, Torres appeared with Attorney S———, and the case was set for trial on August, 12, 1958.

* Chief Judge of the Sixth Circuit. sitting by assignment.

On that latter date, Attorney S—— appeared and indicated to the court that defendant had not been in contact with him, had not cooperated with him and, apparently, had not paid him.[1] On this basis, Attorney S—— asked to be relieved of representation by the court. This was granted. The court then appointed Daniel G. Marshall (who is also counsel on the brief before us) and set the trial for August 14, 1958, without any objection. On August 14, 1958, counsel for appellant moved for a continuance on the ground that he had not had adequate time to consult with his client or to prepare the case for trial. The trial judge refused, and ordered the trial to proceed with the selection of the jury *only*, on that day, and then continued the case for five days to August 19, 1958, to enable counsel to prepare for trial and consult with his client. When the actual trial commenced, counsel for appellant again moved for a continuance on the same ground. This was denied, and the trial proceeded. The next day, when the trial was scheduled to continue, counsel for appellant again moved for a continuance of a day in order to locate witnesses, and the court granted the motion. On August 21, 1958, the trial was resumed, defendant put on no witnesses at all, and did not take the stand himself. That same day the jury reached its verdict. A motion for a new trial was made, and denied.

After reciting some of the foregoing facts, counsel for appellant says: "There was thus very plainly no fair opportunity to prepare this case for trial by adequate consultation with the client, decent research of the law involved, investigation of the facts and careful preparation of instructions." With this conclusion we cannot agree.

Taking the position that there would have been no great imposition on the government to have continued the case for the requested two weeks, appellant cites two cases on ineffective assistance of counsel. However, we note that the more recent of them, Melanson v. O'Brien, 1 Cir., 1951, 191 F.2d 963, 966, was an extreme case where the defendant had *no* counsel whatsoever at his trial *because the district attorney told him it was too late to obtain any*, and the defendant, who had only a sixth grade education, was not aware that he had a right to counsel, and had attempted inadequately and unsuccessfully to represent himself. In the other case, Soulia v. O'Brien, D.C.D.Mass.1950, 94 F.Supp. 764, 765, it was charged that counsel who was appointed to represent the defendant was so ineffective in his conduct of the trial as to be tantamount to no counsel at all. It is readily apparent that these cases have no applicability here.

 Further, the situation which faces most trial courts, including the trial judge here, must be considered. To a certain extent, the lack of time for preparation on the part of appellant's counsel was due to the actions of appellant himself, as the facts outlined above disclose. The trial court explained that it had the problem of other cases calendared for trial at the same time or about the same time and had difficulty in fitting

---

1. It is noted here that the record discloses no dispute as to defendant's complete failure to cooperate with his first attorney. He failed to keep an appointment with his attorney on July 26, 1958. We quote from the transcript:

"Mr. Schutz: This defendant * * * was to appear in my office on a Saturday, July 26th. He neither appeared nor communicated with us, and at that time I wired him by day letter, requesting him to inform me regarding his intentions in this matter on the following Monday.

"On July 30th [Wednesday] not having heard from the defendant in any way whatever, I wrote him a letter * * * instructing him to either make arrangements * * * by August 1st, or I would assume * * * he would retain other counsel.

\* \* \* \* \*

"* * * I must represent to the court that I do not feel able to act in this man's behalf. I have had what I consider no cooperation whatsoever, and I therefore wish to be released.

"The Court: Mr. Torres, you heard Mr. Schutz' statement. Is that true?

"The Defendant: Yes."

them all in with the least inconvenience to all concerned. Finally, there is the important fact that from an examination of the transcript of the trial as a whole, it is apparent that counsel for appellant (well known nationally to court and counsel as an able and effective lawyer) conducted himself with his usual considerable skill and energy. His actions showed that he had spent a considerable amount of time on the law of the case, for he had many comments and objections to make, both concerning the introduction of evidence and the instructions given the jury. These he vigorously pursued before the trial judge. We are of the opinion that all things considered, it cannot fairly nor honestly be said that appellant was denied effective assistance of counsel simply because the trial judge refused to grant *further* continuances in this case, after granting two such continuances before the trial started and two thereafter. Such matters are within the sound discretion of the trial judge and will not be disturbed unless a clear abuse of discretion exists. Sherman v. United States, 9 Cir., 1957, 241 F.2d 329, 338; Williams v. United States, 9 Cir., 1953, 203 F.2d 85. We believe the question here considered was answered by the Supreme Court in Avery v. State of Alabama, 1940, 308 U.S. 444, 60 S.Ct. 321, 84 L.Ed. 377, the law of which, applied to this case, would not require us to hold the facts here constituted a denial of effective assistance of counsel. See also, Couchois v. United States, 5 Cir., 1944, 142 F.2d 1.

## II

On the second point raised, it is contended that the acquittal on the theft charge operated as an acquittal on the charge of knowing possession of the same property charged to have been stolen by the same person. This argument apparently is based primarily on the statements of a district court judge uttered at the hearing on the motion for a forma pauperis appeal, which remarks were to the effect that the judge felt there was a "serious question" on this point. Ap-

pellant also cites Prince v. United States, 1957, 352 U.S. 322, 77 S.Ct. 403, 1 L.Ed. 2d 370, and Heflin v. United States, 1959, 358 U.S. 415, 419, 79 S.Ct. 451, 3 L.Ed.2d 407, both of which dealt with bank robbery statutes and both of which held that certain crimes merged into others under that law. Neither case is apposite here for several reasons. The first is that the Supreme Court itself said in the Prince case that they were dealing with a "unique statute of limited purpose and an inconclusive legislative history. It can and should be differentiated from similar and other problems in this general field raised under other statutes." 352 U.S. at page 325, 77 S.Ct. at page 405. Furthermore, numerous other cases have passed on this precise point, dealing directly with the statute in question and not merely an analogous one. The question apparently first arose in Carpenter v. Hudspeth, 10 Cir., 1940, 112 F.2d 126, 127, certiorari denied, 311 U.S. 682, 61 S.Ct. 62, 85 L.Ed. 440. There it was held that the offense of stealing goods from interstate commerce was a separate and distinct offense from possession of the goods knowing that they had been stolen. As that case said:

"And proof of having possession of the stolen merchandise at a subsequent time and different place from its theft, with knowledge that it had been stolen, was sufficient to support conviction [on the possession count]. One defendant receiving it from another could have been convicted on such proof even though he did not take part in breaking the seal, entering the car, or committing the larceny. It is manifest that the several counts each charged a separate and distinct crime, entirely apart from the others."

112 F.2d at pages 127–128. See also Carroll v. United States, 6 Cir., 1949, 174 F.2d 412; Carroll v. Sanford, 5 Cir., 1948, 167 F.2d 878; United States v. Dunbar, 7 Cir., 1945, 149 F.2d 151, certiorari denied, 325 U.S. 889, 65 S.Ct. 1577,

89 L.Ed. 2002; United States v. Carpenter, 7 Cir., 1944, 143 F.2d 47.

Essentially the argument of appellant on this point is that there exists a legal inconsistency in his being acquitted of the theft charge but convicted of the possession. This precise question was raised and rejected in a similar case, United States v. Dolasco, 3 Cir., 1950, 184 F.2d 746, 749. In that case the defendant was charged with stealing goods in interstate commerce and receiving or possessing such goods knowing them to have been stolen. There the jury acquitted the defendant on the possession count but convicted him of the theft, which, of course, is the opposite of the instant case. As the court said in the Dolasco case, "Each count in the present indictment charges a separate crime and it is enough if there is sufficient evidence to support the jury's verdict of guilty on any one." The court there then pointed out something equally applicable in the instant case: that there is nothing legally or logically inconsistent with the jury finding the defendant guilty on one count and not guilty on the other. The reason is simply that the evidence may not have convinced the jury that the defendant took part in the theft, or, alternatively, that he possessed the stolen goods. In Dolasco the jury did not believe the defendant possessed the goods in the layman's meaning of the word; while in our case the jury did not think the government proved that Torres stole the goods, but did believe he possessed them, knowing they were stolen. Whether there was sufficient basis in the evidence for this belief, in the instant case, is another matter. That issue we consider below under the fourth point.

■ We hold that the fact that the jury acquitted defendant Torres of the theft charge does not operate to require his acquittal, as a matter of law, on the possession charge. As the cases cited all hold, the two counts are entirely separate and distinct crimes which, while perhaps arising out of the same series of acts, are nevertheless based on slightly different evidence and are thus independent of one another.

## III

Turning to a consideration of the third point (that the government did not prove beyond a reasonable doubt that the camera and accessories in question had a value of more than $100.00), we conclude there was no error.

The statute provides a maximum of a $1,000 fine or one year's imprisonment, or both, if the "amount or value of such * * * goods or chattels does not exceed $100," but, if more than $100, the punishment can be up to $5,000 and/or ten years' imprisonment. Contending that the "value" here is market value, according to 18 U.S.C. § 2311, appellant urges that there was no evidence of what the market value of these goods was, but only evidence of what the invoices said they were worth as interpreted by one Lida Stefan, local manager for the camera company. Furthermore, it is argued that another government witness, Berny Silver, who bought the camera and accessories from appellant for $40, testified that such cameras could be purchased at pawn shops in Los Angeles "all day long for that [price], I found out. * * *"

■■ There are at least two reasons why the argument of appellant on this issue is not meritorious. First, the statute cited by appellant is expressly applicable only to Chapter 113 of Title 18 (§§ 2311–2317), while there is another section of the law, 18 U.S.C. § 641, which is apparently applicable to Chapter 31, which includes the section under which Torres was convicted. Section 641 provides that the word "value" means "face, par, or market value, or cost price, either wholesale or retail, whichever is greater." Since the evidence clearly showed that the aggregate price of the camera and the lens in question was in excess of $100, *either at wholesale or list price,* we do not think it open to question, but that amount or value in excess of $100 was proved by the government.

From a common sense standpoint, it is clear that the local manager of the cam-

era company, who had been with them for more than seven years, would be qualified to express an opinion as to the reasonable market value of the photographic equipment in question. See, e. g., Missouri, K. & T. Ry. Co. v. Truskett, 1902, 186 U.S. 480, 22 S.Ct. 943, 46 L.Ed. 1259; Brooks Transp. Co. v. McCutcheon, 1946, 80 U.S.App.D.C. 406, 154 F.2d 841; Keller v. F.T.C., 7 Cir., 1942, 132 F.2d 59. She, in fact, testified that the equipment had a reasonable market value of $139 for the camera and $52 for the lens. Certainly it would be impossible to contend seriously that a new camera and lens has a reasonable market value of less than its wholesale cost from the manufacturer. Appellant must do that here to prevail. It is likewise clear that the fact that Silver (who had no qualifications to appraise the value of photographic equipment whatsoever, by his own admission) felt that the equipment could be bought in a pawn shop for $40, does not mean that this is the fair market value of it. The fact that a pawn shop or a "fence" might be willing to sell property obtained from questionable sources for $40 does not mean that this is its market value.

## IV

The final argument pressed by appellant is that the government did not prove beyond a reasonable doubt that appellant knowingly possessed stolen property. This is a necessary element of proof under a statute which provides in part: "Whoever buys or receives or has in his possession any such goods or chattels, *knowing the same to have been embezzled or stolen * * *"* shall be punished according to the provisions of this section. 18 U.S.C. § 659. [Emphasis added.]

To answer this point it is necessary to review briefly the evidence produced by the government. There was none adduced by the defendant, nor did he choose to take the stand himself. The government put on six witnesses. A fair summary of the evidence would be as follows:

The Paillard Company prepared a shipment of photographic apparatus for in-terstate shipment; arranged by telephone with the agent of a freight company to pick up the packages; and that company did so, signing a receipt for the goods. The agent in turn delivered them to the freight forwarder, who again signed for them upon receipt at its loading dock. Both of these transactions occurred on March 25, 1958. On March 26, 1958, the package containing the items in question could not be found at the freight forwarders. Three men and their boss spent much of the day looking for it, but could not locate it. Subsequently, and after a month's time, the ultimate consignee of the shipment notified Paillard, the consignor, that the camera equipment had not arrived. Paillard then filed a claim with the freight company. The equipment in question all had serial numbers engraved on it, and these serial numbers were noted on all the invoices and most of the shipping documents. Sometime between March 25th and April 15th (most probably in April) the defendant approached witness Silver with the camera and a lens and asked him if he would like to buy it for $40, saying that he needed some money for his family. The meeting took place in a small cafe on St. Louis Street, in Los Angeles. Unaware that there might be some infirmity in defendant's title to the goods, Silver bought them, although admitting that at the time he did not have the slightest idea what they were really worth. He had never seen the defendant before, and did not even know his name until about the time of the trial. Subsequently, Silver was questioned by the police about his possible purchase of a camera, which he admitted. He was asked to check the serial numbers on it and the lens. When he did so, he was told that the camera and lens were stolen, and that he would have to forfeit them as well as the money he had paid for them, which he did turning them over to the police. In addition to this, there is the evidence already noted above under the third point that the fair market value of the camera and lens was $119.06 at wholesale, and listed for $187, which was

its fair trade price. It was stipulated that the camera and extra lens sold to Silver were the same ones mentioned in the indictment and on the shipping documents of Paillard Products.

■ The question is then, considering these facts, was there sufficient evidence, as a matter of law, to sustain the conviction of *knowing* possession of property stolen from interstate commerce. An examination of the cases in this area indicates that this frequently is a very close question. The general statement found in all these cases pertaining to the element of guilty knowledge on the part of the possessor of the stolen property is that "Possession of goods recently stolen justifies the inference that the possessor has guilty knowledge of the theft, in the absence of explanatory facts or circumstances consistent with his innocence." Levi v. United States, 5 Cir., 1934, 71 F.2d 353, 354. Cf., Wilson v. United States, 1896, 162 U.S. 613, 619, 16 S.Ct. 895, 40 L.Ed. 1090. Or as the Sixth Circuit said in Silverman v. United States, 1924, 2 F.2d 716, the government must prove from the circumstances that the defendant must have had knowledge the goods were stolen. It is manifest that mere possession of the goods is not enough. See Wolf v. United States, 2 Cir., 1923, 290 F. 738, 744–745, which has a detailed discussion of the presumption of innocence and the problem of showing knowledge. From this, it is apparent that whether possession plus additional circumstances is sufficient to show knowledge is a matter which must be considered on a case to case basis. In many cases affirmance or reversal of the lower court will depend on how well framed the court's instruction was on this matter. In the instant case, we think the charge to the jury was not only correct but exceptionally fair to appellant.[2]

In reviewing some fifteen relatively recent cases in this area, we note that of them, ten were affirmed, while five were reversed.[3] Of those reversed, two and

2. At the behest of counsel for appellant, the trial judge instructed:

"You are instructed that even though you find beyond a reasonable doubt that defendant had in his possession property which you find beyond a *reasonable* doubt was stolen while in interstate commerce, such possession does not impute knowledge in the defendant that the property was stolen and he is not required to explain such possession since, I now instruct you, there is no burden upon the defendant to prove his innocence."

He further told them:

"It is the exclusive province of the jury to determine whether the facts and circumstances shown by the evidence warrant any inference which the law permits the jury to draw from the possession of recently stolen property. If any possession the accused may have had of stolen property is consistent with innocence, then the jury should acquit the accused."

3. *Affirmed:* Melson v. United States, 4 Cir., 1953, 207 F.2d 558, sold at very low price, markings obliterated on crates; Yielding v. United States, 5 Cir., 1949, 173 F.2d 46, automobiles sold at night, without invoices or shipping documents, and for half market value; United States v. Sherman, 2 Cir., 1948, 171 F.2d 619, bales of duck canvas sold for unlikely price to domestic purchaser although labelled for export; Najjar v. United States, 5 Cir., 1946, 152 F.2d 965, goods sold at low price, and goods marked on packages for delivery to several other parties; Janow v. United States, 5 Cir., 1944, 141 F.2d 1017, testimony by government witness who had been part of the group furnishing the goods to defendant, certain facts unclear in opinion; Husten v. United States, 8 Cir., 1938, 95 F.2d 168, inconsistent story by defendant, registered under assumed name at hotel, attempt to dispose of jewelry by dropping it out hotel window; Girson v. United States, 9 Cir., 1937, 88 F.2d 358, insufficient facts to tell circumstances, as reported; Levi v. United States, 5 Cir., 1934, 71 F.2d 353, sales far below market price, motor numbers on automobiles altered, no records of sales kept; Shuman v. United States, 5 Cir., 1927, 16 F.2d 457, no facts reported; Nakutin v. United States, 7 Cir., 1925, 8 F.2d 491, contradictory statements as to where goods came from, attempts to conceal the goods, bought at half the wholesale price, and large amounts of goods in original packing from three recent thefts found on premises.

*Reversed:* United States v. Carengella, 7 Cir., 1952, 198 F.2d 3, no showing of

possibly three could be said to have been reversed on other than the issue of knowledge that the goods were stolen; two of them were reversed because there was no sufficient showing of possession of the stolen property in the first place. It would seem that common to all of those cases affirmed on this question, there existed some affirmative action on the part of the defendant which indicated guilty knowledge. Such acts as attempts to conceal the goods, sale of the goods at ridiculously low prices, obliteration of serial numbers or identifying marks on the goods, or contradictory stories concerning how the defendant happened to obtain the goods in the first place, have been held sufficient circumstances from which a jury can properly draw an inference of knowledge that the goods were stolen. It would seem fair to say that in each of the cases affirmed the actions on the part of the defendant were such that no reasonable person would have done them unless he suspected that there was something "wrong" with the goods. Of course, whether the possessor of the goods stole them *himself* is immaterial to this offense. See United States v. Dolasco, supra; Carpenter v. Hudspeth, 10 Cir., 1940, 112 F.2d 126, 128, certiorari denied, 311 U.S. 682, 61 S.Ct. 62, 85 L.Ed. 440.

We conclude that where, as here, the evidence brought out at trial was that certain goods were missing from a freight dock, were identifiable by serial number, and the defendant sold them to a complete stranger for less than half of the wholesale value, for cash, without any questions asked, then it is not for us to say that the evidence is insufficient to convict.

■ This may well be a borderline case. Some other trier of fact might have decided the case another way. But

it is not the function of the appellate court to substitute its conclusion for that of the jury.

Finding no basis for reversal on any of the four grounds urged, we *affirm* the judgment of conviction.

possession on the part of two of three defendants; United States v. Wainer, 7 Cir., 1948, 170 F.2d 603, 605, no showing of possession to begin with; Cherry v. United States, 7 Cir., 1935, 78 F.2d 334, evidence showed only purchase from thief, shortly after theft, without invoices, and cash payment for the goods; Silverman v. United States, 6 Cir., 1924, 2 F.2d 716, erroneous instruction with regard to knowledge, which could have misled jury; Wolf v. United States, 2 Cir., 1923, 290 F. 738, semble, reversed on several grounds.