[Crim. No. 687.  Third Appellate District.—July 24, 1923.]

THE PEOPLE, Respondent, v. HENRY JOHNSON, Appellant.

[1] CRIMINAL LAW—COMMON NUISANCE — WRIGHT ACT—PLEADING.— An information charging the defendant with maintaining a common nuisance, as said crime is defined by section 21 of the so-called "Wright Act," is sufficient, where the charge as laid is substantially in the language of the statute.

[2] ID.—GENERAL REPUTATION — HEARSAY—PREJUDICIAL ERROR.—In a prosecution for maintaining a common nuisance in violation of section 21 of the so-called "Wright Act," testimony that the general reputation of the establishment conducted by defendant is that intoxicating liquors were habitually sold and served therein is hearsay and, therefore, incompetent and immaterial; and the admission of such testimony constitutes prejudicial error where it is large in amount and of a substantial character and there is a substantial conflict in the evidence as to whether intoxicating liquors were kept or sold on the premises after defendant assumed charge thereof, which was shortly before the date of the offense charged in the information.

[3] ID.—PRIOR SALES — EVIDENCE—PREJUDICIAL ERROR.—In such a prosecution, it is prejudicial error to permit the prosecution, over defendant's objection, to introduce testimony of sales of intoxicating liquors made upon the premises prior to the time defendant took responsible control and management of the establishment.

APPEAL from a judgment of the Superior Court of Humboldt County. Denver Sevier, Judge. Reversed.

The facts are stated in the opinion of the court.

Metzler & Mitchell and Henry L. Ford for Appellant.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

HART, J.—The defendant was informed against in the superior court of Humboldt County by the district attorney of said county for the crime of maintaining a common nuisance, as said crime is defined by section 21 of the so-called "Wright Act" (Stats. 1921, p. 79), the purpose of which is to enforce the provisions of the eighteenth amendment to

the constitution of the United States. As is commonly known, the legislature of 1921, by and through the act just named, adopted all the provisions of an act of Congress, known as the "Volstead Act" (Ann. Fed. Stats. 1919, Supp., 212, 41 Stat. 305), the design of which was and is the enforcement, within the limits of the federal jurisdiction, of the said amendment to the federal constitution.

The defendant was, upon being tried for the offense so charged, convicted. He made a motion for a new trial, and the same was denied. He prosecutes this appeal from the judgment of conviction and the order denying him a new trial.

So much of section 21 of the act or acts mentioned as affects the present consideration reads as follows: "Any room, house, building, boat, vehicle, structure, or place, where intoxicating liquor is manufactured, sold, kept or bartered, in violation of this title, and all intoxicating liquor and property kept and used in maintaining the same, is hereby declared to be a common nuisance, and any person who maintains such a common nuisance shall be guilty of a misdemeanor and, upon conviction thereof, shall be fined not more than $1000.00, or be imprisoned for not more than one year, or both."

The information charges that the defendant, "on or about the 15th day of January, 1923, at and in the county of Humboldt, State of California, did then and there willfully and unlawfully maintain a common nuisance in and on the premises known as 507 Second street, in the city of Eureka," said county and state, etc.

[1] The defendant, in support of these appeals, presents a variety of assignments of alleged error, but, as we have concluded that the judgment and order must be reversed because of errors in admitting certain evidence, it will not be necessary to consider the other alleged errors, except that involved in the claim that the information does not state a public offense, or fails properly to state the offense sought to be charged, as to which, in view of a possible retrial of the case, it should be said that the charge as laid is substantially in the language of the statute, which itself fully and clearly describes the offense, and that it is, therefore, in all respects sufficient to inform and to have informed the accused of the specific crime with which he was charged so as to enable him

to prepare and interpose thereto any defense available to him. This is all that is required of any criminal pleading.

It appears that the place (507 Second Street) in and upon which the alleged offense was committed was, prior to the second day of January, 1923, owned and conducted by one Ed. Storm as a soft-drink saloon, and that the defendant, for about sixteen months prior to the said second day of January, was employed by said Storm as a barkeeper therein. It further appears that, about the middle of December, 1922, Storm was arrested for, charged with, and convicted of the crime of driving an automobile over and through certain streets or thoroughfares of Humboldt County while in a state of intoxication, and was given a jail sentence therefor; that, while incarcerated in jail for said offense, he applied for probation or parole, and that the authorities agreed to grant his petition upon the condition that he would dispose of the soft-drink establishment at 507 Second Street in question, complaint having previously been frequently made that, in addition to dispensing ·"soft drinks" at said place, he was also engaged in "bootlegging" there; that Storm agreed to the condition and thereupon entered into negotiations with the defendant for the sale of the place to the latter; that an agreement between Storm and the defendant was reached, and that on the thirtieth day of December, 1922, the defendant made application in due form to the city clerk and *ex-officio* tax collector of the city of Eureka for a license to conduct a "soft-drink emporium and poolroom" at said 507 Second Street, the same being issued to him on said day. Both Storm and the defendant testified that the agreement for the sale of the saloon to the defendant was reached about a week before New Year's day of 1923, but that the sale was not fully consummated until the second day of January, 1923, when the defendant paid to Storm the purchase price, and that, on the said second day of January, the defendant became the proprietor and took full control of the place.

The people introduced three witnesses, who were connected with the district atttorney's office as detectives, and who testified that, in the month of January, 1923, and prior to the arrest of the defendant on the charge alleged in the information, they had visited the saloon at 507 Second Street, and called for and were served with intoxicating liquor.

Some of these witnesses, according to their testimony, were visitors of the place on two different occasions in the month of January, 1923, and on each occasion purchased and drank intoxicating liquor there. The people were also permitted to show, against objections by the defendant, that intoxicating liquor had been sold and served in said saloon in the month of April, 1922, or several months prior to the time at which the defendant purchased and became the owner of the saloon, and that they also purchased such liquor in the month of December, 1922, and before the defendant became the owner of the place. And here it may be stated that the witnesses above referred to testified that, although they saw the defendant in or about the saloon at the times they were served with intoxicating liquor therein, he (defendant) did not wait on them or himself serve the liquor.

In addition to the foregoing, which involves a statement in substance of all the direct testimony presented in support of the charge, the people introduced seven witnesses, one of whom was a member of the city council of Eureka, another chief of police of said city, and the others either police officers or members of the so-called "dry squad" of Eureka and Humboldt County, employed as such to run down and prosecute violators of the prohibition laws, and who, over strenuous objections by the defendant, were allowed to testify that the general reputation of the saloon owned and conducted by the defendant was, as one witness characterized it, "bad," and as others expressed it, "a place where booze or liquor can be bought." In other words, the witnesses last referred to were permitted to give testimony, not of what they actually knew to be the fact, but of what the general public had said about the place, to wit, that intoxicating liquors were habitually sold and served therein. And it is the action of the court in allowing this character of testimony to be received into the record and go before the jury that the defendant particularly complains of and which, he contends, and we think justly so, involved error and prejudiced his rights in the trial of the case.

[2] It cannot be doubted that the testimony as to the general reputation of the saloon was pure hearsay and, therefore, incompetent and inadmissible. Neither the Wright Act nor any other law of this state authorizes the proof of the crime of which the defendant was accused and convicted

by any such means, and in the absence of express legislative authority for proving a crime by evidence of common repute, the allowance of such testimony as in proof of such crime involves a palpable contravention of one of the very first rules of evidence, to wit: that hearsay testimony is wholly incompetent for any purpose, unless it is expressly allowed by the legislature. (Wharton on Criminal Evidence, sec. 255; *Cook* v. *State*, 81 Miss. 146 [32 South. 312]; *State* v. *Fleming*, 86 Iowa, 294 [53 N. W. 234]; *Commonwealth* v. *Eagan*, 151 Mass. 45 [23 N. E. 494]; *Hockman* v. *State*, 59 Tex. Cr. 183 [127 S. W. 825]; *Gorman* v. *State*, 52 Tex. Cr. 327 [106 S. W. 384]; *Trayhan* v. *State* (Tex. Civ. App.), 180 S. W. 646.) These cases, with the exception of the last named, involved precisely the same character of crime as is involved herein and the identical question at present before us. In each of said cases the conviction of the accused was set aside because the trial court permitted the people, over objection by the defendant, to prove the alleged crime by testimony that the general reputation of the latter's place of business was that it was a place where intoxicating liquors were habitually sold or served to the public.

The remaining question is whether the action of the court in admitting testimony of the general reputation of the saloon as against the defendant was prejudicial to his rights, or whether, upon a consideration of the entire testimony, a miscarriage of justice would follow the upholding of the verdict.

It is inconceivable that any fair-minded person, after an examination of this record, could reach the conclusion, with the slightest ground for hope that such conclusion would be regarded as just, that the testimony that the general reputation of the saloon of the defendant was that it was a place where intoxicating liquors were sold and served did not have the effect of seriously prejudicing his rights.

There is a direct conflict between the testimony of those witnesses who testified to having bought intoxicating liquor in the saloon in question on the several occasions in the month of January, 1923, mentioned by them, and the testimony of the witness Lax, a bartender in said saloon at the times designated, and that of the defendant. Lax was the party who, the state's witnesses declared, sold them the liquor on the occasions referred to, but he positively testified

that he did not sell or serve any of said witnesses with whisky or other intoxicating liquor on the days or at the times mentioned. The defendant, testifying in his own behalf, asseverated that, after he became the owner and took charge of the saloon, on the second day of January, 1923, no intoxicating liquor was kept in the place and with equal emphasis declared that none was sold or served therein to any person. With the conflict in the testimony so pronounced, it may readily be understood how the testimony as to the general reputation of the saloon as a place where contraband liquors were dispensed could have injuriously affected the rights of the accused. The testimony of the witnesses of the respective sides as to the sale or serving of intoxicating liquors in the saloon being of equal positiveness, the incompetent testimony referred to might have had, and probably did have, the effect, in the matter of weighing the proofs, of turning the scale against the defendant. Indeed, when the character of the witnesses giving the hearsay testimony is considered, it would seem most probable that the jurors would attach more than ordinary importance to their testimony. As seen, a majority of said witnesses occupied important and responsible public offices in the city of Eureka, and from this we are authorized to assume, in the absence of the impeachment of their characters or testimony, that they hold a high place in the estimation of the citizens of that city and of Humboldt County, and likewise may it well be assumed that they were personally well and favorably known to the jurors, or a majority of them, sitting as arbiters of the defendant's fate, so far as his trial on the charge against him was concerned.

While, ordinarily, the determination of a sharp conflict in the evidence addressed to the proof and disproof of a disputed issue of fact is a matter entirely within the province of the jury, or the court, if the questions of fact are submitted to its decision, still the very fact that there is here such a positive evidentiary conflict compels the conclusion that the allowance of so large an amount of hearsay testimony as in proof of the defendant's guilt had the effect of denying to him that fair and impartial trial to which every person on trial for his life or his liberty in our country is entitled as a matter of absolute right. Nor, even upon its face, is the competent evidence of guilt in this case so over-

whelming in probative weight or force as to warrant the conclusion that a miscarriage of justice would not result from the verdict, if it is permitted to stand. It may be conceded that section 4½ of article VI of the constitution is a mantle within the dark recesses of whose ample folds a multitude of errors occurring in the trial of a case may rest secure against judicial inspection, but we cannot persuade ourselves that it was ever intended as authority supporting or sanctioning the denial to a defendant in a criminal or a litigant in a civil case a fair and impartial trial according to the law of the land.

[3] Not alone upon the foregoing considerations do we conclude that the defendant was not accorded the character of trial which the laws guarantee to him, but our view also is that the testimony of sales made in said saloon prior to the time at which the defendant purchased the place and himself took responsible control and management of the establishment was wholly irrelevant to the issue in his case, and that its effect was to prejudice him in the minds of the jury. Such testimony might be pertinent to and admissible in a civil action to abate the nuisance, but certainly it is wholly foreign to this case, which, it must be kept in mind, involves a charge of criminal conduct on the part of the accused. He was charged with committing an offense against the people of the state. Obviously, the act or acts of another having no connection with the defendant or with the act or acts constituting the basis of the criminal charge against him would not be relevant or material to his case.

The judgment and the order are reversed and the cause is remanded.

Finch, P. J., and Burnett, J., concurred.