[Crim. No. 762.   Third Appellate District.—May 19, 1924.]

THE PEOPLE, Respondent, v. M. J. SILVA et al., Appellants.

[1] CRIMINAL LAW—SALE OF INTOXICATING LIQUOR—PLEADING—SUFFICIENCY OF INDICTMENT.—An indictment charging that the defendants sold "a certain amount of intoxicating liquor for beverage purposes, and not for sacramental or medicinal purposes, the said intoxicating liquor then and there containing more than one-half of one per cent of alcohol by volume," substantially follows the language of the statute and is sufficient.

[2] ID.—PROOF OF OTHER SALES—SALES MADE BY EMPLOYEE OF DEFENDANT—KNOWLEDGE AND CONSENT OF EMPLOYER—EVIDENCE.— The general rule is that proof of other sales of intoxicating liquor is not admissible in support of a charge of a specific sale, but where the evidence discloses that the sale charged was made by an employee of a defendant, evidence of other sales is admissible

1. See 14 Cal. Jur. 743; 15 R. C. L. 384.

2. Evidence of other crimes in prosecution for violation of liquor law, notes, 18 Ann. Cas. 846; 62 L. R. A. 230, 290, 325. See, also, 15 R. C. L. 397.

Evidence of other sales to prove identity of defendant, notes, 3 A. L. R. 1555; 22 A. L. R. 1020; 27 A. L. R. 358.

as tending to show the knowledge and consent of the employer and that he had authorized his employee to make unlawful sales.

[3] ID.—PROPRIETOR AND BARTENDER JOINTLY CHARGED—PROOF OF OTHER SALES—ADMISSIBILITY OF.—In a prosecution in which the proprietor of a soft-drink establishment and his bartender were jointly charged with an unlawful sale of intoxicating liquor, where the objections made to the proof of other sales were general as to both defendants, and no separate objection was made in behalf of the bartender, and no request made that the consideration of such evidence be limited to the question of the proprietor's complicity in the offense charged, the admission of evidence of other sales was not error.

[4] ID. — STATEMENTS OF ONE BARTENDER TO ANOTHER — EMPLOYER AND EMPLOYEE—EVIDENCE.—In such a prosecution, the statement of the defendant bartender to another bartender to the effect that the latter was to act as lookout having been in the nature of a direction as to the latter's duties for the night (the night of the sale forming the basis of the prosecution) and having been made in the course of the defendant bartender's employment and, presumably in the performance of his duties, was admissible as tending to show the manner in which the proprietor's business was conducted, and taken in connection with the positive testimony of a prosecution detective that said other bartender was employed as a lookout, the testimony tends to show that the proprietor knew that illicit sales were being made, because a lookout is not usually employed in the conduct of a legitimate business.

[5] ID.—QUESTIONS BY TRIAL JUDGE — ABSENCE OF PREJUDICE. — In such prosecution, it cannot be successfully contended that the trial court committed prejudicial error in questioning the bartender who was not a party defendant, where the defendants interposed no objections to any of the questions asked by the court, it not appearing from the record that the defendants' rights were prejudiced by any of such questions.

[6] ID.—EXAMINATION OF WITNESSES BY TRIAL JUDGE—EXERCISE OF GREAT CAUTION.—A trial judge should exercise great caution in the examination of witnesses, lest by the nature or form of the questions asked he throw the weight of his influence to the one side or the other.

[7] ID.—IMPROPER QUESTION BY JUDGE—DUTY OF ATTORNEY TO MAKE SEASONABLE OBJECTION.—It is not only the privilege but the duty of the attorney for a party to make seasonable objection to any improper question asked by the judge.

---

3.   See 8 Cal. Jur. 503; 10 Cal. Jur. 816; 26 R. C. L. 1047.

4.   See 8 Cal. Jur. 85.

5.   Court's right to examine witnesses, note, 6 Ann. Cas. 477. See, also, 28 R. C. L. 587.

7.   See 8 Cal. Jur. 498; 28 R. C. L. 588.

[8] ID.—ERRONEOUS INSTRUCTION—ABSENCE OF PREJUDICE—VOLSTEAD ACT—CONSTRUCTION.—Since the Wright Act adopted only the "penal provisions" of the Volstead Act and section 33 of the Volstead Act is not one of the penal provisions of said latter act, but prescribes a rule of evidence merely, an instruction substantially in the language of said section 33 should not have been given in such prosecution; but since the defendant proprietor's possession of intoxicating liquor at his place of business must have been unlawful, it is highly improbable that the rights of the defendants were in any manner prejudiced by the erroneous instruction.

[9] ID.—CHARACTER OF LIQUORS PURCHASED—TESTIMONY OF PROSECUTION WITNESSES—ADMISSIBILITY OF.—In such prosecution, witnesses for the prosecution were rightfully permitted to testify as to the character of the liquors which they purchased, they having testified that they were familiar with the taste of beer, wine and whisky.

[10] ID.—JUDICIAL NOTICE—"JACKASS BRANDY."—The courts do take judicial notice of "the true signification of all English words and phrases," and will take judicial notice of what "jackass brandy" is.

---

(1) 33 C. J., p. 713, sec. 424, p. 722, sec. 438, p. 723, sec. 438. (2) 16 C. J., p. 605, sec. 1174; p. 606, sec. 1174. (3) 16 C. J., p. 877, sec. 2198, p. 1059, sec. 2500. (4) 33 C. J., p. 756, sec. 498, p. 780, sec. 534. (5) 33 C. J., p. 274, sec. 3602, p. 296, sec. 3637, p. 801, secs. 559, 560. (6) 16 C. J., p. 831, 2100. (7) 16 C. J., p. 836, sec. 2111. (8) 33 C. J., p. 743, sec. 479, p. 791, sec. 547, p. 801, sec. 560. (9) 33 C. J., p. 773, sec. 526. (10) 23 C. J., p. 124, sec. 1940, p. 125, sec. 1941; 33 C. J., p. 496, sec. 17, p. 775, sec. 527.

APPEAL from judgments of the Superior Court of Sacramento County and from orders denying new trials. Charles O. Busick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Clifford A. Russell and L. M. Shelley for Appellants.

U. S. Webb, Attorney-General, and J. Charles Jones, Deputy Attorney-General, for Respondent.

---

8. See 8 Cal. Jur. 628.
9. See 14 Cal. Jur. 751; 15 R. C. L. 396.
10. Judicial notice of intoxicating liquors, note, 124 **Am. St. Rep.** 20. See, also, 14 **Cal.** Jur. 752.

FINCH, P. J.—The defendants were jointly charged with an unlawful sale of intoxicating liquor. They were jointly tried and were convicted. This appeal is from the judgments of conviction and the orders denying their motions for new trials.

[1] The indictment charges that the defendants sold "a certain amount of intoxicating liquor for beverage purposes, and not for sacramental or medicinal purposes, the said intoxicating liquor then and there containing more than one-half of one per cent of alcohol by volume." The defendants demurred to the indictment on the grounds that it does not substantially conform to the requirements of sections 950, 951 and 952 of the Penal Code, that it does not state a public offense and "that more than one offense is charged." Appellants contend that the indictment is defective in that the defendants "were entitled to know what class or kind or amount of intoxicating liquor they were charged with selling." The indictment substantially follows the language of the statute and is sufficient. (*Matter of Application of Anixter*, 166 Cal. 762 [138 Pac. 353]; *People* v. *Johnson*, 63 Cal. App. 178 [218 Pac. 449]; *People* v. *Bassetti*, 58 Cal. App. 390 [208 Pac. 696]; *Massey* v. *United States*, 281 Fed. 293; *Booth* v. *United States*, 197 Fed. 283 [116 C. C. A. 645].)

At the time of and prior to the alleged sale, the defendant Silva was the proprietor of the Waldorf Club, where he dispensed soft drinks and cigars. Defendant Luxton was one of his bartenders. The witness Harry White was another bartender employed by defendant. George Dahm, a detective employed by the district attorney, testified that on the 31st of October, 1923, at about 10:30 o'clock P. M., he purchased from Luxton, at Silva's bar, a drink of whisky each for himself and White, paying fifty cents for the two drinks, and that the liquor was served in "a regular whiskey glass." It was of this sale that the defendants were convicted. Silva testified that he was "standing at least fifteen, twenty, or fifteen feet from" Dahm at the time the drinks were served and that there was no "jackass brandy or whiskey served to Dahm or Harry White" on that occasion. Luxton testified that he did not serve them with jackass brandy and White testified that they were not served with whisky but that he and Dahm each had a bottle of near beer on the occasion referred to by Dahm. Dahm testified that at that time Luxton said to White: "You are

playing the part of the Indian tonight,'' meaning the ''part of a lookout, to give the signal''; that the witness knew personally that White was ''one of the lookouts there and gives signals''; and that the witness went back a second time and asked White for ''a bottle, and he says: 'No, . . . I will not sell a bottle to you or even to my own brother.' '' N. C. Kazar, another detective, testified that on the same evening, at about 10:30 P. M., he visited the Waldorf Club in company with another person; that Luxton was behind the bar and Silva about twenty feet away from him, at the end of the bar; that ''we went in and asked him (Luxton) for a drink of whiskey, and they said 'nothing doing,' the federal agents were out; they wasn't selling anything at all''; that the witness ''was told that they wasn't serving any, on account of the federal agents. That was part of it, between themselves,—''; that on the 27th of October, 1923, he visited the Waldorf Club and saw there a large number of members of a fraternal order, of which Silva was secretary, drinking from whisky glasses; that the witness on that occasion asked Luxton for a drink of whisky and ''got a drink of jackass'' for which he paid twenty-five cents. Luxton testified that he did not sell jackass brandy to Kazar.

It is argued that it was error to admit proof of the sale of jackass brandy to Kazar on the 27th of October. **[2]** The general rule is that proof of other sales is not admissible in support of a charge of a specific sale, but where the evidence discloses that the sale charged was made by an employee of a defendant, evidence of other sales is admissible as tending to show the knowledge and consent of the employer and that he had authorized his employee to make unlawful sales. In *Smith* v. *State,* 5 Okl. Cr. 67 [113 Pac. 204], it is said: ''Where the state charges and relies upon a particular sale, the general rule is that proof of other sales, for the purpose of establishing the particular sale charged, is not admissible.'' In *Tucker* v. *State,* 7 Okl. Cr. 634 [124 Pac. 1134, 125 Pac. 1089], the defendant was convicted of an unlawful sale made by his wife. It was held that proof of other sales was admissible to show that the wife was acting for the defendant in making the sale. In *Bundy* v. *State,* 16 Okl. Cr. 481 [184 Pac. 795], the defendant was convicted of an unlawful sale made by an employee. It was held that evidence of other unlawful sales was admissible to show that the sale charged was made

with defendant's knowledge and consent. In *Thompson* v. *State,* 189 Ind. 182 [125 N. E. 641], an employer and his employee were jointly charged with a specific sale made by the latter. The court said that, if the defendants had been tried separately, it would have been reversible error to admit proof of other sales in the trial of the employee, but that such evidence would have been admissible against the employer to show his complicity in the sale which was made by the employee. In *State* v. *Stamper,* 159 Mo. App. 382 [141 S. W. 432], a druggist was prosecuted for a sale made by his clerk. It was held that proof of other sales by the clerk was properly allowed as tending to show the druggist's tacit consent to the making of unlawful sales by the clerk. [3] The objections made to the proof of other sales were general as to both defendants, and no separate objection was made in behalf of defendant Luxton, nor was any request made that the consideration of such evidence be limited to the question of Silva's complicity in the offense charged. Under such circumstances, the admission of the evidence was not error.

[4] It is contended that it was error to admit proof of the foregoing conversations between witnesses for the prosecution and Luxton and White. Admittedly, Luxton and White were Silva's bartenders and, therefore, his agents in the conduct of his business. The statement of White that he would not sell ''a bottle'' to Dahm was of little, if any, importance. Luxton's statement to White to the effect that the latter was to act as a lookout was in the nature of a direction as to White's duties for the night and was made in the course of Luxton's employment and, presumably, in the performance of his duties. It was not a narration by an agent of a past transaction, but was a part of the transaction itself. The statement was admissible as tending to show the manner in which Silva's business was conducted. Taken in connection with the positive testimony of Dahm that White was employed as a lookout, the testimony tends to show that Silva knew that illicit sales were being made, because a lookout is not usually employed in the conduct of a legitimate business. It must also be kept in mind that Silva, according to his own testimony, was at that time but fifteen or twenty feet distant from Luxton. Silva was about twenty feet away when Kazar asked Luxton for whisky and ''was told that they wasn't serving any, on account of the federal

agents." It is even uncertain from the evidence whether Silva did not participate in the conversation with Kazar.

[5] It is contended that the court committed prejudicial error in questioning the witness White. The defendants interposed no objections to any of the questions asked by the court and it does not appear from the record that the defendants' rights were prejudiced by any of such questions. [6] Of course, the trial judge should exercise great caution in the examination of witnesses, lest by the nature or form of the questions asked he throw the weight of his influence to the one side or the other. [7] It may be further said that it is not only the privilege but the duty of the attorney for a party to make seasonable objection to any improper question asked by the judge.

[8] The court instructed the jury substantially in the language of section 33 of the Volstead Act (41 Stats. at Large, 317 [Fed. Stats. Ann. 1919, Supp., p. 216; U. S. Comp. Stats. Ann. Supp. 1923], § 10138½t). The Wright Act (Stats. 1921, p. 79) adopted only the "penal provisions" of the Volstead Act. (*In re Brambini*, 192 Cal. 19 [218 Pac. 569].) Since section 33 is not one of the penal provisions of the Volstead Act, but prescribes a rule of evidence merely, the same was not adopted by the Wright Act, and the instruction should not have been given. (*People* v. *Mattos, ante*, p. 346 [227 Pac. 974].) Under no provision of the Volstead Act could Silva have had possession of intoxicating liquor at his place of business lawfully. Since his possession, if any, must have been unlawful, it is highly improbable that the rights of the defendants were in any manner prejudiced by the erroneous instruction.

[9] It is contended that the court erred in permitting Dahm and Kazar to testify as to the character of the liquors which they purchased without requiring proof that they knew the taste of such liquors. Yet, at page 55 of the transcript there appears Dahm's positive testimony that he was familiar with the taste of beer, wine and whisky and on page 59 appears the testimony of Kazar to the same effect. Kazar asked for whisky and "got a drink of jackass." It is now argued that there is no evidence to show the alcoholic contents of jackass brandy, and that courts cannot take judicial notice thereof. [10] The courts do take judicial notice of "the true signification of all English words and phrases." (Code Civ. Proc., sec. 1875.) If there is any person at this late day who does not know that

jackass brandy is a distilled liquor containing a high percentage of alcohol he must have lived far from the haunts of the bootlegger and outside the zone of circulation of the daily press. Other grounds urged for a reversal are manifestly without merit.

The judgments and the orders are affirmed.

Plummer J., and Weyand, J., *pro tem.*, concurred.