THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* JOSÉ BARTOLOMEI BARTOLOMEI, Defendant and Appellant.

No. 13706.   Argued June 1, 1949.—Decided December 16, 1949.

*Benjamín Ortiz* and *Alvaro Ortiz* for appellant. *Vicente Géigel Polanco, Attorney General,* and *J. Rivera Barreras, Fiscal of the Supreme Court,* for appellee.

MR. JUSTICE NEGRÓN FERNÁNDEZ delivered the opinion of the Court.

José Bartolomei Bartolomei was convicted by a jury of the crime of murder in the second degree and sentenced from fifteen to twenty years' imprisonment in the penitentiary. In his brief on appeal he assigns four errors.

The second assignment is to the effect that as a consequence of a question asked by the trial judge to defendant while the latter was testifying, in the presence of the jury, defendant was deprived of a fair and impartial trial due to the prejudiced mental state created in the mind of the jury

by the suggestion involved in the question. We believe that appellant is correct. Let us see:

The evidence for the prosecution which, with respect to the facts, consisted of the testimonies of witness Macario Rivera Rojas, in charge of the restaurant Las Tres Palmas, in Bayamón, on the night of the occurrence, and Porfirio Vega, Chief of the Insular Police of the District of Arecibo, showed that at about half past one in the morning of August 31, 1946, when the restaurant was about to be closed, three persons arrived, one of them called Alemán, and two companions; they had refreshments and dined and upon coming out of the restaurant a discussion ensued. A few minutes later Chief Vega, in civilian clothes, arrived with his wife, and other companions in an automobile and entered the restaurant to eat, and detective Angel Luis Collazo, who drove the vehicle and was also in civilian clothes, remained waiting in the automobile. At that moment a shot was heard and Chief Vega came out to investigate what had happened, at the same time that defendant was running from the road toward the restaurant. He was grabbed by Chief Vega who told him to keep still, that he was an insular police captain, and the man in charge of the restaurant, Rivera Rojas, repeated this to him. As Chief Vega loosened his grip, defendant ran toward the road in the direction of a pick-up truck whereupon Vega, detective Collazo, and Rivera Rojas went after him. When defendant climbed on the footboard of the truck he took a revolver in his hands, and pointed it at them saying "if you come closer, I'll shoot." Chief Vega, as well as detective Collazo, moved their hands to show them to defendant so that he could see that they were unarmed and as they took a step backward, someone addressed Vega and told him "take cover behind the palm trees, you'll be killed." When Vega and detective Collazo took a position behind a palm tree, defendant fired a shot at them, whereupon Vega and Collazo fired at the truck, that was starting at that mo-

ment in the direction of Bayamón, but not before Collazo had fired three shots and Vega one. Collazo was found wounded and taken to the Bayamón District Hospital where he died.

Defendant's testimony, given to the district attorney during his investigation after the events, was introduced by the district attorney and admitted without defendant's objection. In said testimony defendant, when asked by the district attorney why he had fired, said: "Well, I shot at him on the spur of the moment or because I had been drinking; I thought that they could shoot at us and wound one of us three." During the trial, defendant, in answer to a question of the district attorney, testified that he did not recall that the district attorney had asked him the question which appeared answered in the manner previously indicated.

The evidence for the defense tended to show that on the night of the occurrence defendant arrived to eat at the restaurant Las Tres Palmas on his return from a wedding in Vega Baja, accompanied by his brother Pablo and a friend called Gilberto Rodríguez Meléndez; that while they were there a brother of the latter arrived to demand an explanation from Gilberto as to why he had not taken for him a cask of beer to the wedding, recriminating him because he had put him on the spot; that they argued and went outside and engaged in a fight; that when defendant and his brother Pablo realized this, they went out to separate them, but at that moment Juan Amalio Alemán who had come driving the automobile in which Gilberto's brother had arrived, went excitedly to separate the Rodríguez Meléndez brothers; that the former went to the car, from where he took out a machete and attacked Gilberto as well as defendant and his brother Pablo, trying to slash them; that the latter yelled to Alemán not to do that and that as defendant retreated toward the exit of the restaurant Las Tres Palmas, after Alemán had wounded Gilberto on the knee, Pablo, defendant's brother,

shot Alemán, wounding him, and Gilberto then took the machete away from Alemán; that when the latter returned to his automobile, Gilberto hit Alemán with the flat side of the machete; that then Gilberto and defendant's brother ran toward the truck in which they had come, which was on the road, while a group of persons took hold of defendant, who freed himself and ran to the truck and climbed on the footboard on the side of the steering wheel; that his brother Pablo, while starting the vehicle, gave him the revolver so that he would not let anyone come near and thus avoid being surrounded; that defendant took the gun, pointed it at the group and threatened them not to come closer because he would shoot; that the group, approaching in an aggressive manner, went behind one of the palm trees, and as the bus started a shot came from behind the palm tree, followed by other shots, whereupon defendant fired; that defendant did not know Chief Vega; that when he was grabbed someone told him: "I am Chief Vega, I am from the police," but since he was in civilian clothes and did not identify himself otherwise, defendant on his part, could not identify him.

While defendant was on the witness stand, the following took place:

(His attorney examines)

"Q. When you fired the gun, did you intend to kill somebody?

A. No, sir, at no time.

Q. Why did you shoot then?

A. I also did it in our defense, because the attitude of those people, in my judgment, was an aggressive attitude, it was not a good attitude; and I tried to defend myself and to defend the others.

The Court:

Q. *Were you not told when you were grabbed, 'I am Chief Vega' or 'I am from the police'?*

A. *Yes, but as that gentleman was dressed in civilian clothes, I was unable to identify him, because he did not identify himself with me.*

Q. *Didn't Mr. Macario Rivera tell you 'that gentleman is Chief Vega'?*

A. I did not hear those words.

Defense:

Q. Proceed.

A. Then we went on toward Río Piedras, on the way to Río Piedras.

Defense: That is all with the witness." (Italics ours.) (The district attorney examines)

"Q. What were your other friends doing meanwhile?

A. I did not see them at the time.

Q. When you went near the cafeteria, running, that two persons were holding you. . .

A. I did not go near the cafeteria. . . It was a group of persons that grabbed me; neither were they two persons, those who grabbed me.

Q. Were you then grabbed by more than two persons?

A. Yes, sir, by the arms.

Q. Isn't it true that Captain Vega took you by the arms, but without pressure, that he afterwards relaxed his grip and then you went away?

A. Yes, sir. *He did not do a thing to me, because I did not know him; I do not know either whether he was a policeman.*

Q. But didn't he pull out a gun on you?

A. I did not pull out any revolver on him either.

Q. Nor the other one who threatened you?

A. No, sir.

The Court:

Q. Didn't someone tell you 'I am a policeman'?

A. One of them told me 'I am a policeman,' as he was dressed in civilian clothes—like I said before—I was unable to identify him; because he did not identify himself with me at any time.

Q. *And what more did you want if he told you 'I am a policeman'?*

Defense: Exception to the questions of the court." (Italics ours.)

The importance of the court's interpellation to defendant in the presence of the jury emerges from what the latter, in weighing all the evidence presented, would have decided as to the identification of Chief Vega by defendant.

It is an established rule in most jurisdictions that the trial judge should not ask questions or make any remark which because of its scope, form, expression, or implication may convey to the jury his opinion or suggestion on the guilt of the defendant, or on the weight or sufficiency of the evidence. He should confine himself to observing in his examination of the witnesses the principles which generally govern the examination of witnesses. *People* v. *León*, 53 P.R.R. 408 (1938); *Connley* v. *United States* (C.A. 9, 1931), 46 F. 2d 53; *Gallahan* v. *United States* (C.A.10, 1929), 35 F. 2d 633; *Cusmano* v. *United States* (C.A. 6, 1926), 13 F. 2d 451, cert. denied in 275 U. S. 773, 71 L. ed. 885; *Barron* v. *United States* (C.A. 1, 1925), 5 F. 2d. 799; *People* v. *Silva* (1924), 67 Cal. App. 351, 227 Pac. 976, and Annotation 84 A.L.R. 1172.

In the examination or cross-examination of a defendant it is also a rule that remarks made by a judge do not constitute a ground for reversal unless they are of such a nature as to tend reasonably to influence the minds of the jury against the defendant, depriving him of the right to a fair and impartial trial. *Daly* v. *United States* (C.A. 7, 1929), 33 F. 2d 443. See Annotation in 65 A.L.R. 1270 as to those that tend to or that may influence the jury against the defendant being prejudicial.

The determination as to whether or not a remark made by the judge in the course of a trial is prejudicial to a defendant turns on the scope of the remark, of the influence it might have on the jury and its effects in regard to the defendant's opportunity to defend himself. It depends on the circumstances of each case in particular. We shall not enumerate here, then, cases in other jurisdictions which have held that remarks made by a judge have been on some occasions prejudicial and on others not prejudicial to the defendant. See to that effect the Annotations in 10 A.L.R. 1116 and those already cited in 65 A.L.R. 1270 and 84 A.L.R.

1172.    In our jurisdiction the judge is called upon to sum up the evidence in trials by jury.[1]    He is not authorized to express his opinion either directly or indirectly on the facts or on the credibility of the witnesses.    It is incumbent on the jury to weigh the evidence and the credit it deserves.    In line with this cardinal principle of our system of criminal justice, this Court, in *People* v. *León, supra*, said, at p. 419:

".  .  .  . For this reason the judge must be very careful and avoid as far as possible making any gesture or statement which may be interpreted by the jury as indicative of his opinion with regard to the merit of the case.    The judge can put any question to a witness which he believes necessary in order to clear up, in the furtherance of justice, any point which may have been left obscure after the examinations by the prosecution and by the defense; but he should not examine a witness for the purpose of contradicting or discrediting him before the jury.    This mission is left to the prosecuting attorney and to defense counsel."

And in *People* v. *Tirado et al.*, 38 P.R.R. 795, it was said. at p. 798:

"This Court has sustained the right of the jury to weigh the evidence as the sole judge, without suggestions which may disturb them in the act of agreeing upon a verdict.    It has held also that under no circumstances should the jury be led to infer from the words of the judge what his opinion is as to each of the elements of proof, nor it is lawful to suggest anything to them which may tend to divert their judgment of what they honestly believe to be just and impartial. (*People* v. *Rodríguez*, 11 P.R.R. 225.)"

In the case at bar the judge's interpellation to the accused with his question "and what more did you want if he told you 'I am a policeman'?" undoubtedly constitutes an error prejudicial to defendant.    Let us see why.    The theory of the defense was to the effect that defendant fired the shot

---

[1] Section 233, subdivision 8, Code of Criminal Procedure; *People* v. *Rodríguez*, 69 P.R.R. 903 (1949); *People* v. *Valentín*, 63 P.R.R. 756 (1944); *People* v. *Lebrón*, 61 P.R.R. 634 (1943).

under such circumstances as would make him reasonably fear death or serious bodily harm by a group of persons following him, after he had freed himself from those holding him and had run to the truck where already his brother, at the wheel, and his friend Gilberto were; that Chief Vega as well as detective Collazo were in civilian clothes, (a fact also shown by the evidence for the prosecution); that shortly before, defendant, as well as his brother and Gilberto, had been attacked and one of them wounded by one Alemán; that neither defendant nor his companions knew Chief Vega or detective Collazo and that although one of them told defendant, when grabbing him, that he was a policeman, defendant, who did not know Vega, could not determine it, and that therefore he considered that the group of persons following him to the truck was going to attack them; that for that reason he tried to prevent them from getting close to the vehicle in which they were ready to leave, and that when several of those persons hid behind a palm tree and he heard a report, he fired a shot.

It is obvious, therefore, that it was essential for defendant that the jury, freely and without any insinuation on the part of the court, determined whether under the facts submitted for its consideration, as a whole, defendant had had sufficient reason to believe that it was in fact a group of persons aggressively following or ambushing him with the intent of harming him or his companions or whether, on the contrary, he acted aware that among those persons there were policemen who would not have the intent or purpose of attacking him. Even though the jury may have not believed that defendant's shot was fired, as was tended to be shown, subsequently to a shot fired from behind the palm tree with which several of the "civilians" protected themselves, it was up to the jury to determine, notwithstanding this, whether pursuant to the facts established by defendant's evidence, the

circumstances were of such a nature that would have reasonably made him believe that he was in imminent danger of death or of serious bodily harm. For a fair analysis of the evidence and the determination of guilt or innocence of defendant under the constitutional guarantee of a fair and impartial trial, it was an indispensable requisite that defendant's testimony with respect to the identification of Chief Vega, in regard to his defense theory, went to the jury without the insinuation of the court that Vega's words to defendant were sufficient for the latter to recognize the former's identity as chief of police, notwithstanding that he was in civilian clothes. There is nothing in the record to indicate that Chief Vega or detective Collazo showed their badges at the time to defendant. With the court's insinuation in its interpellation to defendant, "and what more did you want if he told you 'I am a policeman?'" every opportunity was closed for defendant that the jury might, in weighing the evidence, decide that Vega's words had not been sufficient identification to enable defendant, in the excitement caused by the events immediately preceding, to be convinced of such identity and not suspect that it was a ruse. It is reasonable to think that the jury, because of the prestige and respect due to the exalted position of the judge, felt influenced by his words and accepted as good the conclusion implied in them. We believe, therefore, that an error was committed and that it was prejudicial and was not cured by the general instructions to the effect that the jury is the only judge of the facts. 53 Am. Jur. Trial, § 94, p. 85.

In view of the conclusions we have reached as to the second error assigned, it is unnecessary to consider the others.

The judgment appealed from is reversed and the case remanded for a new trial.

Mr. Justice Snyder dissented.