EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* JOAQUÍN SANJURJO GÓMEZ, acusado y apelante.

Núm. 15185.—*Sometido:* Junio 18, 1952. *Resuelto:* Junio 20, 1952.

*Benicio Sánchez Castaño, R. Rivero Cervera* y *César Andréu Ribas,* abogados del apelante; *Hon. Procurador General Víc-*

*tor Gutiérrez Franqui (J. B. Fernández Badillo, Procura-*
*dor General Auxiliar, en el alegato) y J. Rivera Barreras,*
*Fiscal del Tribunal Supremo, abogados de El Pueblo, ape-*
lado.

EL JUEZ ASOCIADO SEÑOR SNYDER emitió la opinión del tri-
bunal.

Joaquín Sanjurjo Gómez fué acusado ante el tribunal de
distrito del delito de asesinato en primer grado cometido al
dar muerte a Julio Torres Domínguez mientras realizaba un
robo o atraco.   Se le celebró juicio ante jurado y éste lo de-
claró culpable.   Contra la sentencia de reclusión perpetua
que se le impuso y contra la resolución declarando sin lugar
su moción de nuevo juicio, interpuso recurso de apelación.

La teoría del Pueblo fué que durante las horas de la
madrugada del 7 de febrero de 1948 el acusado, armado de
un revolver y con un pañuelo cubriéndole parte del rostro,
penetró en El Morocco, un restaurante en Santurce, y ame-
nazó a un mozo del mismo; que le arrebató un billete de $5
que el mozo tenía en sus manos; que luego se subió sobre el
mostrador de la barra y amenazó al cajero con el revólver;
que el administrador del establecimiento, Julio Torres Do-
mínguez, se le acercó y lo tocó, y entonces el acusado se volvió
hacia él y le hizo un disparo de revólver, ocasionándole la
muerte casi instantáneamente; que luego el acusado, quien
todavía estaba enmascarado, corrió y abordó un automóvil
que tenía el motor funcionando; que el automóvil se dirigió
por la Avenida Ponce de León en dirección a San Juan.   El
acusado interpuso la defensa de coartada.

El apelante señala cuatro errores.   En su alegato
el Fiscal de este Tribunal discute primeramente el segundo
error, ya que está conforme en que el mismo fué cometido y
amerita que revoquemos la sentencia y devolvamos el caso
para la celebración de un nuevo juicio.   Por consiguiente,
pasemos a considerar el segundo error, que dice así: "El
Tribunal inferior erró al invadir en forma indebida fun-
ciones que solamente corresponden al jurado, privando al

acusado de un juicio justo e imparcial, al comentar el peso y analizar elementos de la prueba aportada en el juicio."

El incidente que dió margen a este supuesto error ocurrió como sigue: Ramón M. Virella, detective y testigo del Pueblo, declaró en el interrogatorio directo que ocupó en la casa del acusado, en un cordel, un pañuelo que la madre del acusado acababa de lavar. Que se lo llevó al cuartel, se lo mostró al acusado y lo entregó al teniente Soto. En el contrainterrogatorio el testigo declaró que le dijo a la madre del acusado que iba a buscar el pañuelo que le había informado Sanjurjo. También dijo que el acusado "le explicó dónde estaba la ropa que él tenía puesta esa noche." Luego, en respuesta a una pregunta de un jurado, el testigo dijo que "Yo al cuartel me traje cuatro pañuelos del acusado, se los presenté a Sanjurjo '¿cuál es el que tú usaste esa noche?', entonces él mismo sacó el pañuelo." Según el testigo, el acusado dijo en ese momento "éste es el que yo tenía esa noche."

Al ser nuevamente interrogado el testigo por la defensa, ocurrió lo siguiente:

"P. Bueno, ¿y a qué tenía usted que ver a este joven a los cuatro días de ya estar preso, para qué tenía que verlo usted?

"Sr. Fiscal. Inmaterial.

"La Corte. Es material por lo siguiente: el testigo dijo que el acusado le dijo que *él tenía ese pañuelo y que lo usó esa noche y antes de eso lo autorizó a ir a su casa.* A preguntas del Juez de hechos don Benigno Ortiz, declaró que habló amigablemente con el acusado, tranquilamente, y que *el acusado Sanjurjo le admitió que con ese pañuelo era que él había estado en El Morocco; en otras palabras, que él era el enmascarado.* Es admisible cualquier investigación que se haga en relación con la conducta de él en relación con el acusado, y la conducta del acusado en relación con él.

"Sr. Fiscal. Nosotros creemos que es así a nuestro juicio ahora se trata de hechos posteriores en la cárcel de distrito.

"La Corte. No porque puede investigarse toda la conducta antes y después. En este delito de esta naturaleza, que es la primera vez que lo veo yo, deben investigarse todos los extremos todos los hechos con la mayor liberalidad para que los señores

del jurado tengan la verdad de los hechos hasta donde ello sea posible llegar a la verdad. Porque si los señores del jurado creyeren que este acusado es culpable, no hay más que un veredicto, uno solo, no puede haber más de uno, o sea de asesinato en primer grado en que la única pena es de reclusión perpetua. No hay duda de que el testigo ha dicho que vió al acusado con un golpe en la cara; *que el acusado le manifestó a él que ese pañuelo lo usó esa noche en El Morocco, de manera que eso envuelve una admisión por parte del acusado de su culpabilidad;* de modo que el jurado atendido eso tiene perfecto derecho a oír el testimonio de Virella para darle una oportunidad más amplia tanto al acusado como al Pueblo para que los señores del jurado puedan captar con mayor claridad el testimonio de Virella en esa silla, puedan ver su gesto, sus movimientos, cuál es la verdad, unida al testimonio del Cojo y al de Miranda. . . ." (Bastardillas nuestras.)

En *Pueblo* v. *Bartolomei,* 70 D.P.R. 698, dijimos a las págs. 703-4:

"Es regla establecida en casi todas las jurisdicciones que el juez que preside un juicio no debe hacer preguntas o comentarios que por su alcance, forma, expresión e implicaciones puedan llevar al jurado su opinión o sugestión sobre la culpabilidad del acusado, o sobre el peso o suficiencia de la evidencia, debiendo limitarse a observar en su interrogatorio de los testigos los principios que gobiernan el examen de los testigos en general. *Pueblo* v. *León,* 53 D.P.R. 429 (1938); *Connley* v. *United States* (C. A. 9, 1931), 46 F. 2d 53; *Callahan* v. *United States* (C. A. 10, 1929), 35 F. 2d 633; *Cusmano* v. *United States* (C. A. 6, 1926), 13 F. 2d 451, cert. denegado en 273 U. S. 773, 71 L. ed. 885; *Barron* v. *United States* (C. A. 1, 1925), 5 F. 2d 799; *People* v. *Silva* (1924), 67 Cal. App. 351, 227 Pac. 976, y monografía en 84 A.L.R. 1172.

"En el examen o contrainterrogatorio del acusado es regla también que los comentarios del juez no constituyen motivo para revocación a menos que los mismos sean de tal naturaleza que tiendan razonablemente a influir las mentes del jurado contra el acusado, privándole de su derecho a un juicio justo e imparcial. *Daly* v. *United States* (C. A. 7, 1929), 33 F. 2d 443. Véase monografía en 65 A.L.R. 1270, siendo perjudiciales los que tiendan a, o puedan influir en el jurado, adversamente al acusado.

"La determinación de si un comentario del juez en el transcurso de un juicio es perjudicial o no al acusado, gira alrededor del alcance de dicho comentario, de la influencia que el mismo pueda ejercer en el jurado y de sus efectos en relación con la oportunidad de defensa del acusado. Depende de las circunstancias de cada caso en particular. No habremos de enumerar aquí, pues, casos de otras jurisdicciones en que se ha sostenido que comentarios de un juez han sido, unos, perjudiciales, y otros, no perjudiciales al acusado. Véanse a ese respecto monografías 10 A.L.R. 1116 y las ya citadas en 65 A.L.R. 1270 y 84 A.L.R. 1172. En nuestra jurisdicción, en juicios por jurado, el juez está llamado a hacer un resumen de la evidencia. No se le autoriza a expresar, directa o indirectamente, su opinión sobre los hechos ni sobre la credibilidad de los testigos. Corresponde al jurado la apreciación de la prueba y el crédito que ella le merezca."

Convenimos con el Fiscal de este Tribunal en que el juez sentenciador infringió la regla establecida por nosotros en el caso de *Bartolomei*. Nada hay en los autos que indique que el acusado admitiera *que él había estado en El Morocco* esa noche con el pañuelo. Además, tampoco hay evidencia de que Sanjurjo admitiera *que él era el enmascarado*. En vista del hecho de que la teoría de la defensa era la coartada, las manifestaciones del juez de distrito se relacionaban con un punto de suma importancia. Como dichas manifestaciones no encuentran apoyo en la evidencia, las mismas fueron altamente perjudiciales al acusado. En su consecuencia, no podemos sostener la sentencia dictada.

Resta sólo indicar que el acusado no objetó estas manifestaciones del juez sentenciador en el momento en que éste las hizo. Sin embargo, este Tribunal puede conocer de errores fundamentales cometidos en una causa criminal aun cuando no se hubiere interpuesto objeción contra ellos en la corte sentenciadora. *Pueblo* v. *Díaz*, 10 D.P.R. 466; *Pueblo* v. *Barrios*, 23 D.P.R. 831; véase *Pueblo* v. *Lugo*, 69 D.P.R. 41. Los comentarios del juez de distrito fueron tan perjudiciales al acusado que estamos convencidos de que éste no tuvo el juicio justo e imparcial a que tenía derecho.

Bajo las circunstancias, basamos nuestra decisión en el segundo error aun cuando el abogado del acusado no objetara las manifestaciones del juez.

En vista de lo anterior, es innecesario que consideremos los otros errores señalados por el acusado.

*La sentencia del tribunal de distrito será revocada y se devolverá el caso para la celebración de un nuevo juicio.*