EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAÚL
SERRANO NIEVES, acusado y apelante.

*Número:* CR-65-155      *Resuelto:* 31 de enero de 1966

*Santos P. Amadeo* y *Antonia Hidalgo Díaz,* abogados del ape-
lante; *J. B. Fernández Badillo, Procurador General,* y *Elpidio
Arcaya, Procurador General Auxiliar,* abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR DÁVILA emitió la opinión del Tribunal.

Se acusó al apelante de que "ilegal, voluntaria, maliciosa
y criminalmente, tenía en su posesión y dominio la droga
narcótica conocida como heroína". Arguye que la acusación
es insuficiente pues "es necesario que se alegue que el [acu-

sado] no estaba autorizado por el funcionario competente a poseer dicha droga". No tiene razón.

■ El estatuto nuestro, contrario al federal, castiga la mera posesión. *Pueblo* v. *Pellot Pérez*, 92 D.P.R. 812 (1965). Pero aun bajo el estatuto federal, no se requiere que en la acusación se alegue que el acusado no tenía licencia para traficar con drogas, *United States* v. *Palmiotto*, 347 F.2d 223 (2d Cir. 1965); *Chin Gum* v. *United States*, 149 F.2d 575 (1st Cir. 1945).

■ La cuestión que acabamos de resolver es la única que levanta el apelante, pero como es tradición de este Tribunal en el cumplimiento de su misión de impartir justicia, inspirada en lo dispuesto en la Ley de 12 de marzo de 1903, 4 L.P.R.A. sec. 36, al efecto de que "en sus deliberaciones y fallos en todos los asuntos, tanto en lo civil como en lo criminal, [el Tribunal Supremo] no se limitará solamente a infracciones de ley o quebrantamientos de forma, según fueren señalados, alegados o salvados por los litigantes, o según se hiciera constar en sus exposiciones y excepciones sino que con el más alto fin de justicia, . . . puede también entender en todos los hechos y tramitaciones en la causa tal como aparecieren en autos, considerando en igual forma sus méritos para la mejor administración de justicia y del derecho, y evitar injusticias y demoras." *Pueblo* v. *Aletriz*, 85 D.P.R. 646, 652 (1962); *Pueblo* v. *Túa*, 84 D.P.R. 39, 61 (1961); *Pueblo* v. *Rosado*, 78 D.P.R. 436, 439 (1955); *Pueblo* v. *Sanjurjo*, 73 D.P.R. 574, 578 (1952); *Pueblo* v. *Lugo*, 69 D.P.R. 41 (1948); *Pueblo* v. *Barrios*, 23 D.P.R. 831, 838 (1916); *Pueblo* v. *Lebrón*, 23 D.P.R. 658, 661–2 (1916); *Pueblo* v. *Díaz (a) Leña Verde*, 10 D.P.R. 466, 473 (1906); en lo criminal y en lo civil *Dávila* v. *Valdejully*, 84 D.P.R. 101 (1961); *Reyes* v. *Reyes*, 76 D.P.R. 284, 294 (1954); *Rivera* v. *Sucn. Lugo*, 42 D.P.R. 189, 193 (1931); hemos examinado cuidadosamente la prueba presentada para sos-

tener la acusación a los fines de determinar si se estableció la culpabilidad del acusado más allá de toda duda razonable.

■ El único testigo que declaró en el juicio fue un agente especial de Rentas Internas del Departamento de Hacienda. (¹) El apelante no presentó prueba por entender que la aducida en apoyo de la acusación no era suficiente.

El agente afirma que no conocía al acusado, que antes del día de los hechos no tenía conocimiento de que fuese un adicto. Declaró el agente que el 8 de octubre de 1963 "como a las 4:20 pasaba por la Calle San Francisco, llevaba un cigarrillo en la boca, sin fósforo, frente a la Tienda Franklin cuando me estaba buscando a ver si tenía fósforos salió el acusado". ". . . De la Tienda Franklin con un paquete . . ." "Simultáneamente le pedí un fósforo y él habló algo, se puso el paquete entre las piernas y sacó de este bolsillo derecho una caja de fósforos y él mismo con las dos manos abrió la caja de fósforos y al abrirla vi que tenía dos decks de supuesta heroína". ". . . Inmediatamente traté de agarrarlo y él se dio a la fuga. Corrimos un tramo desde la Tienda Franklin y logré alcanzarlo y antes de lograr alcanzarlo en el término de la Tienda Franklin hasta donde logré alcanzarlo se metió la mano en la boca, le abrí la . . . Entonces le abrí la boca".

El fiscal le pregunta entonces "Usted dice que le abrió la boca y qué ocurrió entonces" a lo que contesta "Pues aparentemente se había tragado el deck". "¿No le vio el deck?" contesta "No señor". Continúa "lo dejé a él y seguí caminando por el tramo donde corrimos y cerca de la tienda encontré el deck que le había visto a él, un deck amarillo". Afirma que "el color es muy diferente a los que venden corrientemente, que son blancos, y ese es amarillo". Afirma que encontró el *deck* "en el trayecto que corrimos entre la acera y donde van los carros, cerca de un carro . . . en la

---

(¹) Se estipuló que el químico declararía que la evidencia presentada era heroína.

orilla de la calle por donde pasan los carros" que "en ningún momento se lo ocupó a [el acusado]" y que no vio que el acusado tirara el *deck* a la calle.

Surge además de la prueba que el paquete que el apelante se puso entre las piernas cuando fue a atender el pedido del agente contenía 17 enaguas.

Tiene que dejar grandes y fundadas dudas en la conciencia del juzgador la prueba presentada en apoyo de la acusación.

No es fácil creer que el testigo pudiera observar lo que contenía la caja de fósforos cuando el apelante la abrió para ofrecerle candela. Igualmente es muy improbable que el acusado abriera la caja de fósforo para encender uno si en ella guardaba los *decks* de heroína. Era una operación muy arriesgada en la Calle San Francisco del viejo San Juan. El propio testigo dice que el color del deck que ocupó "es muy diferente a los que venden corrientemente que son blancos y ese es amarillo". ¿Qué justificación tenía el testigo para tratar de arrestar al acusado a quien no conocía, por haber visto dentro de una caja de fósforos—si es que en verdad podía observarlo—un pedacito de papel amarillo doblado, pedacito de papel que era de un color distinto, según su propio testimonio, al que usan generalmente para envolver drogas?

El testigo no ocupó droga alguna en la persona del apelante ni vio que éste lanzara al suelo el *deck* que ocupó en una de las calles más transitadas de nuestra capital. Es difícil creer que el acusado mientras corría sacara los *decks* de la caja de fósforos, se tragara uno y el otro lo tirara a la calle. El elemento incriminatorio de la huida no aparece satisfactoriamente atado con una conciencia de culpabilidad por la posesión de la droga. La prueba más bien sugiere su relación con la posible sustracción de las 17 enaguas que el apelante tenía en la bolsa que portaba.

La prueba presentada por el Estado no establece más allá de duda razonable la culpabilidad del apelante. Estamos

conscientes de nuestra responsabilidad en la administración de la justicia criminal. En el descargue de esa responsabilidad, tanto debe pesar en nuestro ánimo el bienestar social como la seguridad individual. Es nefasto el tráfico de drogas. Es un cáncer que corroe nuestro cuerpo social. Pero sería más funesto que permitiéramos que se resquebrara la libertad individual, la seguridad de que sólo puede privarse de la libertad con evidencia que establezca la culpabilidad más allá de duda razonable.

No cumpliríamos con nuestro deber si estando plenamente convencidos de que la prueba en determinado caso no establece la culpabilidad más allá de duda razonable, permitiéramos que prevaleciera una sentencia condenatoria. Cuando ello ocurre no se trata de una intervención con la función del juez o del jurado en la apreciación de la prueba, sino de un error de derecho. En el presente caso no se trata de dirimir un conflicto en la prueba, pues sólo desfiló la de cargo, sino simplemente si el contenido de la presentada hace surgir una duda razonable sobre la responsabilidad del acusado.

Vale aquí recordar lo que reafirmamos en *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961) en circunstancias parecidas:

"Es norma reiterada nuestra la de respetar y sostener la apreciación que hagan los jueces de instancia de la prueba que ante ellos se ofrece. Solamente hemos alterado esos dictámenes en casos de 'error manifiesto' en el desempeño de dicha función, cuando un examen detenido de toda la prueba nos convence que el juzgador descartó injustificadamente elementos probatorios importantes o fundó su criterio únicamente en testimonios de escaso valor, o inherentemente improbables o increíbles."

*Lo menos que puede afirmarse en el presente caso es que dada la naturaleza de la prueba presentada, ha debido prevalecer una duda razonable. Absolveremos al acusado.*

El Juez Asociado Señor Ramírez Bages disintió en opinión en la cual concurre el Juez Asociado Señor Pérez Pimentel.

—O—

Opinión disidente del Juez Asociado Señor Ramírez Bages en la cual concurre el Juez Asociado Señor Pérez Pimentel

San Juan, Puerto Rico, a 31 de enero de 1966

Disiento del dictamen del hermano Juez Dávila en este caso al efecto que la prueba presentada no establece la culpabilidad del apelante más allá de duda razonable. En efecto concluye que el veredicto del jurado se fundó en "testimonios de escaso valor, o inherentemente improbables o increíbles". Nótese que el apelante en ningún momento suscitó esta cuestión en esta apelación.

El testimonio del agente Víctor Flores Colón demostró que el apelante poseía la droga. Si los hechos que dieron lugar a esa conclusión eran creíbles o inverosímiles, como indica la opinión mayoritaria, correspondía al jurado resolver y lo resolvió en forma adversa al apelante. Se arguye que es difícil creer que dicho testigo pudiera observar lo que contenía la caja de fósforos. Y luego se pregunta qué justificación tenía este testigo para tratar de arrestar a una persona a quien no conocía. Obviamente el agente tiene que haber visto los sobres doblados dentro de la caja de fósforos y deducir que se trataba de una portación de drogas pues de lo contrario no se puede explicar el que tratase de arrestar y luego persiguiese a una persona que desconocía y que más tarde averiguó que se trataba de un adicto a drogas. La determinación de si era o no razonable o verosímil que el agente viese unos papeles en la caja de fósforos y los asociase con sobres de droga de los que usualmente usan los adictos correspondía hacerla al jurado como en efecto la hizo. Es cierto que el agente no le ocupó droga alguna al apelante. Pero hubo prueba circunstancial de que la poseía cuando el agente intentó arrestarlo, consistente de la declaración del agente de que el apelante se llevó una mano a la boca en

ademán de esconder uno de los sobres y que el sobre amarillo lo encontró el agente "en la orilla de la calle", "cerca de la tienda" donde el agente y el apelante se encontraron primeramente. Se arguye que es difícil creer que el apelante sacara los sobres de la caja de fósforos y se tragara uno y tirara el otro al suelo mientras corría; que el sobre ocupado pudo haber sido tirado por otro y que de la huida del apelante podía inferirse que se debía a que el paquete de enaguas que además portaba era mercancía hurtada por él de la tienda de donde salía cuando se topó con el agente. Es cierto que el testimonio del agente presentaba las referidas dificultades. No creo que razonablemente se prestara la inferencia de que la fuga se debía a haber robado la mercancía en cuestión, en ausencia de prueba sobre la más leve sospecha de ese hecho, sino más bien al hecho de portar droga pues la prueba indicó que el apelante era un adicto y que uno de los sobres que se vieron en su posesión se encontró en la calle. La fuga en este caso podía ser considerada por el jurado como demostrativa de una conciencia no exenta de culpabilidad. *Pueblo* v. *Vega Santos*, 88 D.P.R. 272 (1963). Pero correspondía al jurado y no a este Tribunal pesar y aquilatar la prueba y resolver, de acuerdo con su mejor criterio, si la prueba presentada establecía la culpabilidad del apelante más allá de duda razonable. No creemos que la prueba presentada es de "escaso valor o inherentemente improbable o increíble", como dijimos en *Pueblo* v. *Luciano Arroyo*, 83 D.P.R. 573 (1961). Tampoco podemos concluir que ni la evaluación ni la apreciación de dicha prueba hecha por el jurado es incorrecta. *Pueblo* v. *Pérez Escobar*, 91 D.P.R. 10 (1964). Ni fue la prueba claramente insuficiente como se determinó en *Pueblo* v. *Maysonet Laureano*, 90 D.P.R. 497 (1964).

Resulta aparente que la opinión de mayoría se fundamenta en varias conjeturas y supuestos a base de lo cual se sustituye el criterio de apreciación de la prueba que hizo

el jurado. No creemos que sea ésta la actuación más deseable por parte de un tribunal de apelación. Bajo las circunstancias de este caso e independientemente de la reacción que nos produzca la lectura del récord del mismo se impone la norma de no intervenir en las conclusiones del jurado que vio y oyó los testigos. No se trata en este caso de insuficiencia de prueba como pretende sostener la mayoría pues la presentada por el Pueblo, de ser creída, como lo fue, es suficiente para sostener la convicción.

Por las razones expuestas creo que la sentencia dictada en este caso debió confirmarse.